Paula LAIRD, on her own behalf and on behalf of others similarly situated, Plaintiffs,

v.

Al RAMIREZ, in his official capacity as Director of the Iowa Department of Education, Defendant.

No. C 95–3015.

United States District Court, N.D. Iowa, Central Division.

April 24, 1995.

Tom Krause of Legal Services Corp., Des Moines, IA, for plaintiff Paula Laird.

Christie J. Scase, Asst. Atty. Gen. of the State of Iowa, Des Moines, IA, for defendant Al Ramirez.

TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND ..........................................1268

II. ANALYSIS................................................................1270
 A. Subject Matter Jurisdiction ......................................1270
 1. Facial Or Factual Challenge Pursuant To Rule 12(b)(1) ...........1271
 2. Dismissal Or Amendment? ........................................1273
 B. Jurisdiction Under 28 U.S.C. § 1343(a)(3)........................1274
 C. Jurisdiction Under 28 U.S.C. § 1331 ............................1274
 1. Principles of Exclusivity ..................................1275
 2. The SSA and § 1983 causes of action ........................1278
 3. Preliminary requirements for § 1983 causes of action .......1281
 4. Preclusion of the § 1983 claim in Laird's first cause of action ....1283
 a. Enforceable rights? ...................................1283
 b. The remedial scheme of Titles II and XVI..............1283
 c. The remedial scheme and preclusion ...................1284
 5. Preclusion of the § 1983 claim in Laird's second cause of action .....1285
 a. Coexistence of remedies ..............................1285
 b. Coexistence of the remedies here .....................1286

III. CONCLUSION .............................................................1286

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

BENNETT, District Judge.

This motion to dismiss requires the court to explore the vexing jurisdictional question of whether plaintiffs may pursue a class action pursuant to 42 U.S.C. § 1983 to compel state officials to comply with standards, policies, procedures, and federal court decisions in making disability determinations under Titles II and XVI of the Social Security Act (SSA). The defendant has moved to dismiss for lack of subject matter jurisdiction on the ground that the SSA provides a comprehensive remedial scheme thus precluding plaintiff's challenge pursuant to § 1983. In resolving this question, the court must grapple with applying the murky principles of statutory exclusivity lurking in the *"Sea Clammers* doctrine" and its progeny.

This lawsuit has been filed as a class action for injunctive and declaratory relief to compel the Iowa Disability Determination Services Bureau (DDSB), as the body authorized to make initial disability determinations within the meaning of the Social Security Act, to evaluate disability claims according to proper standards and procedures. The plaintiff and the class she seeks to represent assert that they are not challenging specific disability determinations made by the defendant, but only the standards, policies, and procedures defendant utilizes in determining disability for Social Security Disability Insurance and Supplemental Security Income purposes. The defendant is the Director of the Iowa Department of Education, of which the DDSB is a division. Although plaintiff has moved for class certification, no class has yet been certified. Plaintiff has also moved for a preliminary injunction. Defendant has not yet answered the complaint nor responded to the motion for preliminary injunction, but instead has moved to dismiss for lack of subject matter jurisdiction pursuant to *Fed. R.Civ.P.* 12(b)(1).

## I. INTRODUCTION AND BACKGROUND

Named plaintiff Paula Laird filed the complaint in this class action lawsuit on February 15, 1995, following denial of her application for disability benefits based on major depression and low back spasms. The defendant is Al Ramirez, the Director of the Iowa Department of Education. The Iowa Department of Education, through its Disability Determination Services Bureau (DDSB), is authorized to make the initial determinations for Iowa claimants of whether or not such claimants are disabled within the meaning of the Social Security Act. Based on allegations of immediate and irreparable harm as the result of financial distress caused by improper determinations that plaintiffs are not disabled, plaintiffs also filed a motion for preliminary injunction on February 15, 1995. On March 9, 1995, plaintiff moved for conditional class certification and requested an immediate hearing.

By order dated March 14, 1995, the court set a hearing on plaintiffs' motions for conditional class certification and for a preliminary injunction for April 10, 1995. However, on March 30, 1995, defendant moved to dismiss this matter for lack of subject matter jurisdiction pursuant to *Fed.R.Civ.P.* 12(b)(1). After consultation with the parties, the court determined that it should consider the motion to dismiss first. The hearing scheduled for April 10, 1995, was therefore cancelled, and a telephonic hearing on the motion to dismiss was scheduled for April 19, 1995. The court promised a prompt disposition of the motion to dismiss, and indicated further that if it was necessary to address the motions for preliminary injunction and conditional class certification after disposition of the motion to dismiss, that a hearing on those matters would be rescheduled as soon as possible. This ruling fulfills that promise.

The complaint in this matter seeks injunctive and declaratory relief on behalf of the plaintiff class to compel the DDSB to make initial disability determinations according to proper standards and procedures. Paragraph 2 of the complaint provides the critical explanation of the nature and purpose of this lawsuit:

This is a class action brought pursuant to 42 U.S.C. § 1983 seeking injunctive and

declaratory relief from defendant's actions in evaluating Social Security Disability Insurance and Supplemental Security Income benefits based on disability to plaintiffs. This action is not a challenge to specific disability determinations made by defendant, but to the standards, policies and procedures defendant utilizes in determining disability for Social Security Disability Insurance and Supplemental Security Income purposes. The relief sought is not an award of benefits for any class member, but is for declaratory and injunctive relief that would require the defendant to utilize proper standards and procedures in the disability determination process. Complaint, ¶ 2. The prospective class is identified as disabled residents of the State of Iowa who in the two years preceding the filing of this action have been or may in the future be denied Social Security Disability Insurance and Supplemental Security Income benefits as a result, in whole or in part, of one or more of the identified policies, practices, or procedures of the defendant. Complaint, ¶ 7. The class excludes persons who appealed the denial of benefits and who received a favorable decision at a higher administrative or court level, or who were denied benefits because they returned to substantial gainful activity, or who were children. Complaint, ¶ 8.

The policies, practices, and procedures plaintiffs challenge are described in the complaint as follows:

a. DDS did not properly evaluate the Claimant's subjective allegations under 20 C.F.R. § 404.1529 and § 416.929, and *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir.1984), *supplemented,* 751 F.2d 943, 948 (8th Cir.1984);

b. DDS did not give the proper weight to the well-supported opinion of the treating physician, contrary to 20 C.F.R. § 404.1527 and § 416.927, and *Ghant v. Bowen,* 930 F.2d 633 (8th Cir.1993 [1991]);

c. DDS did not utilize the services of a qualified vocational specialist in evaluating the Claimant's claim, contrary to 20 C.F.R. § 404.1469a(d) and § 416.969(d), *McCoy v. Schweiker,* 683 F.2d 1138 (8th Cir.1983 [1982]), and Social Security Ruling 83–14.

Complaint, ¶ 7. The complaint makes two claims for relief. The first claim asserts that by evaluating claims for disability in the manner described above, defendant "has violated the rights of the plaintiff and the class she represents under the Social Security Act and pertinent regulations." Complaint, ¶ 24. The second claim for relief asserts that defendant's policies and practices "have failed to properly incorporate federal regulations, judicial decisions and standards in the evaluation of disability cases at initial and reconsideration levels of the administrative determination process," Complaint, ¶ 25, and that "[b]y applying one of two separate standards of review in disability determinations, Defendant Ramirez has violated plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution." Complaint, ¶ 26.

In the complaint, Laird asserted that this court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3), that venue is proper pursuant to 28 U.S.C. § 1391(b), and that her claims and those of the class she desires to represent are "authorized by 42 U.S.C. § 1983 and declaratory judgment is authorized by 28 U.S.C. §§ 2201 and 2202." Complaint, ¶¶ 3 & 4. On March 30, 1995, Ramirez moved to dismiss the complaint pursuant to *Fed.R.Civ.P.* 12(b)(1) for lack of subject matter jurisdiction. Ramirez asserts that neither of the statutes Laird has cited provide this court with subject matter jurisdiction over her claims. Ramirez argues that the Social Security Act does not deal with the concept of "equality" or with the guarantee of "civil rights" as those terms are commonly understood, and therefore 28 U.S.C. § 1343 provides no jurisdictional basis for Laird's claims. Ramirez also argues that federal question jurisdiction under 28 U.S.C. § 1331 is improper. Ramirez argues that the extensive remedial provisions of the SSA preclude a cause of action pursuant to § 1983; thus, there is no federal question under § 1983 upon which to found federal question jurisdiction in this case.

The court turns first to the standards applicable to disposition of the motion to dismiss, then to consideration of each of Laird's

proffered grounds for subject matter jurisdiction.

## II. ANALYSIS

### A. Subject Matter Jurisdiction

Ramirez has moved to dismiss for lack of subject matter jurisdiction pursuant to *Fed. R.Civ.P.* 12(b)(1).[1] *Fed.R.Civ.P.* 12(b)(1) provides that a party may raise the defense of "lack of jurisdiction over the subject matter" in a motion before answering the complaint filed in any action. The federal district courts have always been courts of limited jurisdiction. *See* U.S. Const., Art. III, § 1. "Federal courts are not courts of general jurisdiction and have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Marine Equip. Management Co. v. United States,* 4 F.3d 643, 646 (8th Cir.1993) (citing *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501, *reh'g denied,* 476 U.S. 1132, 106 S.Ct. 2003, 90 L.Ed.2d 682 (1986), citing in turn *Marbury v. Madison,* 1 Cranch 137 [5 U.S. 137] 2 L.Ed. 60 (1803)). *See also Neighborhood Transp. Network, Inc. v. Pena,* 42 F.3d 1169, 1171 (8th Cir. 1994) (federal court jurisdiction limited by Article III of the Constitution). A federal court therefore has a duty to assure itself that the threshold requirement of subject matter jurisdiction has been met in every case. *Bradley v. American Postal Workers Union, AFL–CIO,* 962 F.2d 800, 802 n. 3 (8th Cir.1992) (citing *Sanders, infra* ); *Thomas v. Basham,* 931 F.2d 521, 523 (8th Cir.1991); *Jader v. Principal Mut. Life Ins. Co.,* 925 F.2d 1075, 1077 (8th Cir.1991); *Barclay Square Properties v. Midwest Fed. Sav. & Loan Ass'n,* 893 F.2d 968, 969 (8th Cir.1990); *Sanders v. Clemco Indus.,* 823 F.2d 214, 216 (8th Cir.1987).

"The parties ... may not confer subject matter jurisdiction upon the federal courts by stipulation, and lack of subject matter jurisdiction cannot be waived by the parties or ignored by the court." *Pacific Nat'l Ins. Co. v. Transport Ins. Co.,* 341 F.2d 514, 516 (8th Cir.), *cert. denied,* 381 U.S. 912, 85 S.Ct. 1536, 14 L.Ed.2d 434 (1965). *See also Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 25, 109 S.Ct. 2273, 2287, 105 L.Ed.2d 1 (1989) (Stevens, J., concurring) ("[T]he cases are legion holding that a party may not waive a defect in subject-matter jurisdiction or invoke federal jurisdiction simply by consent," citing *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 377 n. 21, 98 S.Ct. 2396, 2404 n. 21, 57 L.Ed.2d 274 (1978); *Sosna v. Iowa,* 419 U.S. 393, 398, 95 S.Ct. 553, 556–57, 42 L.Ed.2d 532 (1975); *California v. LaRue,* 409 U.S. 109, 112 n. 3, 93 S.Ct. 390, 394 n. 3, 34 L.Ed.2d 342 (1972); *American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 17–18, and n. 17, 71 S.Ct. 534, 541–42, and n. 17, 95 L.Ed. 702 (1951); *Mitchell v. Maurer,* 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934); *Jackson v. Ashton,* 8 Pet. 148, 149 [33 U.S. 148, 149], 8 L.Ed. 898 (1834)); *Lawrence County v. South Dakota,* 668 F.2d 27, 29 (8th Cir.1982) ("[F]ederal courts operate within jurisdictional constraints and ... parties by their consent cannot confer subject matter jurisdiction upon the federal courts."). Even where " 'the parties did not raise any jurisdictional issues[, t]his court is obligated to raise such jurisdictional issues if it perceives any.' " *White v. Nix,* 43 F.3d 374, 376 (8th Cir.1994) (quoting *Lewis v. United States Farmers Home Admin.,* 992 F.2d 767, 771 (8th Cir.1993)). The federal courts have a duty to examine the substantiality of the federal claim throughout the litigation, and must dismiss all claims if the federal claim proves patently meritless even after the trial begins. *Pioneer Hi–Bred Int'l v. Holden Found. Seeds, Inc.,* 35 F.3d 1226, 1242 (8th

1. Laird has resisted the motion to dismiss as though it were one to dismiss for failure to state a claim pursuant to *Fed.R.Civ.P.* 12(b)(6). Laird argues, in a footnote to its brief in resistance to the motion, that Ramirez has conceded that a cause of action under 42 U.S.C. § 1983, if it could be maintained, would provide federal question jurisdiction, but Ramirez's argument that "42 U.S.C. § 1983 does not provide a legitimate

vehicle for plaintiff's claims" seems to be brought under *Fed.R.Civ.P.* 12(b)(6) for failure to state a claim rather than under *Fed.R.Civ.P.* 12(b)(1) for lack of jurisdiction. The court concludes that Ramirez has made a facial challenge to subject matter jurisdiction pursuant to *Fed. R.Civ.P.* 12(b)(1), which incorporates standards from *Fed.R.Civ.P.* 12(b)(6), as the discussion to follow demonstrates.

Cir.1994); *Sanders,* 823 F.2d at 216. However, the Eighth Circuit Court of Appeals has very recently cautioned that "subject matter jurisdiction should not be used to dismiss a case containing even a remotely plausible federal claim if the parties and the courts have already made [a] vast expenditure of resources." *Id.* Because jurisdiction is a threshold issue for the court, the district court has "broader power to decide its own right to hear the case than it has when the merits of the case are reached." *Bellecourt v. United States,* 994 F.2d 427, 430 (8th Cir.1993) (quoting *Osborn v. United States,* 918 F.2d 724, 729 (8th Cir.1990), which in turn quotes *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981)), *cert. denied,* —— U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 371 (1994).

### 1. Facial Or Factual Challenge Pursuant To Rule 12(b)(1)

■ For the court to dismiss for lack of subject matter jurisdiction under *Fed. R.Civ.P.* 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments. *Titus v. Sullivan,* 4 F.3d 590, 593 (8th Cir.1993). The court in *Titus* distinguished between the two kinds of challenges:

> In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction. *Eaton v. Dorchester Dev., Inc.,* 692 F.2d 727, 731–32 (11th Cir. 1982)....
>
> If the [defendant] wants to make a *factual* attack on the jurisdictional allegations of the complaint, the court may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute. *Land v.*

*Dollar,* 330 U.S. 731, 735 n. 4 [67 S.Ct. 1009, 1011 n. 4, 91 L.Ed. 1209] (1947) [footnote omitted]. The proper course is for the defendant to request an evidentiary hearing on the issue. *Osborn [v. United States],* 918 F.2d [724,] 730 (citing *Crawford v. United States,* 796 F.2d 924, 928 (7th Cir.1986)).

*Id.* Ramirez has not requested such an evidentiary hearing, nor submitted any affidavits, instead making what appears to be a purely "legal" challenge to subject matter jurisdiction in this case. However, Laird has submitted the "Declaration Of Michael De-Pree," attesting to the frequency with which he has seen disability evaluations by the DDSB that appear to be in violation of the standards Laird has identified in paragraph 7 of her complaint.

■ The district court has the authority to consider matters outside the pleadings on a motion challenging subject matter jurisdiction under *Fed.R.Civ.P.* 12(b)(1). *Drevlow v. Lutheran Church, Missouri Synod,* 991 F.2d 468, 470 (8th Cir.1993). If material facts are adjudicated by the court in determining its jurisdiction, the appellate court will review the findings of fact for clear error. *Id.* Where the material facts are not in dispute, the appellate court will review the court's determination that it lacks jurisdiction de novo. *Id.* If the court considers matters outside of the pleadings, however, it may not, without notice to the parties, convert a motion to dismiss for lack of subject matter jurisdiction under *Fed.R.Civ.P.* 12(b)(1) into a motion to dismiss for failure to state a claim under *Fed.R.Civ.P.* 12(b)(6), which is subject to summary judgment disposition, because to do so would not allow the parties to respond to the issue the court is weighing for summary judgment. *Layton v. United States,* 919 F.2d 1333, 1334–35 (8th Cir. 1990).[2]

---

2. In *Layton,* the court noted that a 12(b)(1) motion is distinguishable from a 12(b)(6) motion on the ground that the Rules expressly provide that the latter is subject to conversion into a summary judgment motion, while no such provision exists for a 12(b)(1) motion. *Layton,* 919 F.2d at 1335. However, courts have approved such a conversion of a 12(b)(1) motion when appropriate. *Id.* (citing *Less v. Lurie,* 789 F.2d 624, 625 n. 1 (8th

Cir.1986)). There is, however, an exception to the notice requirement before the court makes a conversion into a summary judgment motion articulated in *Van Leeuwen v. United States Postal Serv.,* 628 F.2d 1093, 1095 (8th Cir.1980), which requires that if both parties have submitted affidavits and exhibits outside the pleadings which they understand the district court has accepted for consideration, then the non-moving party has

In *Osborn v. United States,* 918 F.2d 724 (8th Cir.1990), the Eighth Circuit Court of Appeals presented its most exhaustive discussion of the procedures and requirements for determination of a 12(b)(1) motion to dismiss.

> The district court was correct in recognizing the critical differences between Rule 12(b)(1), which governs challenges to subject matter jurisdiction, and Rule 56, which governs summary judgment. Rule 12 requires that Rule 56 standards be applied to motions to dismiss for failure to state a claim under Rule 12(b)(6) when the court considers matters outside the pleadings. [Citations omitted.] Rule 12 does not prescribe, however, summary judgment treatment for challenges under 12(b)(1) to subject matter jurisdiction where a factual record is developed. Nonetheless, some courts have held that Rule 56 governs a 12(b)(1) motion when the court looks beyond the complaint. We agree, however, with the majority of circuits that have held to the contrary.... [Citations omitted.]
>
> The reason for treating a 12(b)(1) motion differently than a 12(b)(6) motion, which is governed by Rule 56 when matters outside the pleadings are considered, "is rooted in the unique nature of the jurisdictional question." *Williamson [v. Tucker],* 645 F.2d [404,] 413 [ (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981) ]. It is "elementary," the Fourth [sic] Circuit stated, that a district court has "broader power to decide its own right to hear the case than it has when the merits of the case are reached." *Id.* Jurisdictional issues, whether they involve questions of law or of fact, are for the court to decide. *Id.* Moreover, because jurisdiction is a threshold question, judicial economy demands that the issue be decided at the outset rather than deferring it until trial, as would occur with denial of a summary judgment motion.

*Osborn,* 918 F.2d at 729.

The *Osborn* court found the distinction between facial and factual attacks on the complaint under 12(b)(1) to be critical. *Id.* (citing *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir.), *cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980), and *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977)). The court stated that

> [i]n the first instance, the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6). The general rule is that a complaint should not be dismissed " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards.

*Id.* at 729 n. 6 (citations omitted).[3] A factual challenge to jurisdiction under 12(b)(1) is unique:

> [H]ere the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56. Because at issue in a factual motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the bur-

---

notice of the court's intention to treat the motion to dismiss as one for summary judgment. *Id.* (concluding that the court could not invoke the *Van Leeuwen* exception on the basis of a unilateral submission of exhibits by the moving party).

**3.** The standards for dismissal under Rule 12(b)(6) were recently restated in *Carney v. Houston,* 33 F.3d 893, 894 (8th Cir.1994):

> We must construe the allegations in the complaint in the light most favorable to [plaintiff],

see [*Concerned Citizens of Neb. v. United States Nuclear Reg. Comm'n,* 970 F.2d 421, 425 (8th Cir.1992) ], and should not approve dismissal of his complaint for failure to state a claim unless "it appears beyond doubt that [he] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

den of proof that jurisdiction does in fact exist.

*Id.* at 730 (quoting *Mortensen,* 549 F.2d at 891). The *Osborn* court stated that the proper course is for the defendant to request an evidentiary hearing on the issue, and, since no statute or rule prescribes the format of such a hearing, " 'any rational mode of inquiry will do.' " *Id.* (quoting *Crawford,* 796 F.2d at 929).

> Once the evidence is submitted, the district court must decide the jurisdictional issue, not simply rule that there is or is not enough evidence to have a trial on the issue. [*Crawford,* 796 F.2d at 929.] The only exception is in instances when the jurisdictional issue is "so bound up with the merits that a full trial on the merits may be necessary to resolve the issue." *Id.*

*Id.*[4]

■ In the present case, the court concludes that Ramirez has made only a facial challenge to subject matter jurisdiction pursuant to *Fed.R.Civ.P.* 12(b)(1). Ramirez's challenge to subject matter jurisdiction is entirely on the ground that Laird cannot pursue her claims under 42 U.S.C. § 1983, and therefore there is no federal question basis for subject matter jurisdiction in this case. The court concludes that no adjudication of facts is necessary to address this challenge. The court will therefore restrict itself to the face of the pleadings, and afford Laird, as the non-moving party, the same protections as it would a party defending against a motion brought under Rule 12(b)(6). *Osborn,* 918 F.2d at 729 n. 6. The general rule is that a complaint should not be dismissed " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Id.* (citations omitted).

### 2. *Dismissal Or Amendment?*

Should the court find that it lacks subject matter to hear this case, the question arises whether the court should simply dismiss the case, or instead should grant the plaintiff leave to amend to cure deficiencies in subject matter jurisdiction. The court believes that common sense and logic dictate that if a court does not have subject matter jurisdiction over the complaint, it could not have subject matter jurisdiction even to allow amendment to the complaint, because lack of subject matter deprives the court of any power to hear the case or take any action in it. *Osborn,* 918 F.2d at 730 (subject matter jurisdiction is the court's very power to hear the case). Thus, the only proper course upon a finding that the court lacks subject matter jurisdiction would seem to be to dismiss the complaint.

■ However, case law is to the contrary. *Dale v. Weller,* 956 F.2d 813, 815 (8th Cir. 1992) (citing *Sanders v. Clemco Indus.,* 823 F.2d 214, 217 (8th Cir.1987), as holding that court should grant leave to amend to cure subject matter defect rather than dismissing where defendant has not been prejudiced by the delay); *Sanders v. Clemco Indus.,* 823 F.2d 214, 217 (8th Cir.1987); *see also Leaf v. Supreme Court of State of Wis.,* 979 F.2d 589, 595 (7th Cir.1992) (" '[W]hile a court must dismiss a case over which it has no jurisdiction when a fatal defect appears, leave to amend defective allegations of subject matter jurisdiction should be freely given,' " quoting *Watkins v. Lujan,* 922 F.2d 261, 264 (5th Cir.1991)), *cert. denied,* —— U.S. ——, 113 S.Ct. 2417, 124 L.Ed.2d 639 (1993). Even where a ruling or judgment is rendered in the absence of subject matter jurisdiction, the ruling is not necessarily void. *See, e.g., Jones v. Giles,* 741 F.2d 245, 247 (9th Cir.1984) (absence of subject-matter jurisdiction *may* render judgment void where

---

**4.** The procedure for disposing of a motion to dismiss for lack of subject matter jurisdiction on the basis of insufficient amount in controversy, for example, is that the sum claimed by the plaintiff controls if it is apparently made in good faith; to justify dismissal, it must appear to a legal certainty that the claim is for less than the jurisdictional amount. *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938); *Zunamon v. Brown,* 418 F.2d 883 (8th Cir.1969); *Hedberg v. State Farm Mut. Auto. Ins. Co.,* 350 F.2d 924 (8th Cir.1965). When a motion to dismiss for lack of subject matter jurisdiction brings into issue the value of the amount in controversy, the plaintiff bears the burden of establishing the jurisdictional requirement with "competent and preponderant proof." *Hedberg,* 350 F.2d at 929.

trial court wrongfully extends its jurisdiction beyond scope of its authority; judgment in absence of subject matter jurisdiction was founded on erroneous interpretation of jurisdiction conferring statute, and was therefore only erroneous, not void); *Kansas City Southern Ry. Co. v. Great Lakes Carbon Corp.*, 624 F.2d 822, 825 (8th Cir.) ("Absence of subject matter jurisdiction may, in certain cases, render a judgment void.... However, this occurs only where there is a plain usurpation of power, when a court wrongfully extends its jurisdiction beyond the scope of its authority."), *cert. denied*, 449 U.S. 955, 101 S.Ct. 363, 66 L.Ed.2d 220 (1980); *but see Commodity Futures Trading Comm'n v. Nahas*, 738 F.2d 487, 491 (D.C.Cir.1984) (entry of order beyond statutory authority of court's subject matter jurisdiction is void). Therefore, should the court find that it lacks subject matter jurisdiction, its course, at least in the first instance, should be to grant leave to amend to cure the defective allegations.

### B. Jurisdiction Under 28 U.S.C. § 1343(a)(3) [5]

Plaintiffs assert jurisdiction against Defendants under 28 U.S.C. § 1343(a)(3). Defendants contend that jurisdiction cannot be maintained under this section. In their resistance, Plaintiffs concede that jurisdiction cannot be based on section 1343(a)(3). *See* Mem. at 3 n. 2. Plaintiffs' concession is a wise one. The United States Supreme Court stated in *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), that:

> The Social Security Act does not deal with the concept of "equality" or with the guarantee of "civil rights" as those terms are commonly understood. The Congress that enacted § 1343(3) was primarily concerned with providing jurisdiction for cases dealing with racial equality; the Congress that enacted § 1343(4) was primarily concerned with providing jurisdiction for actions dealing with the civil rights enumerated in 42 U.S.C. § 1985, and most notably

the right to vote. While the words of these statutes are not limited to the precise claims which motivated their passage, it is inappropriate to read the jurisdictional provisions to encompass new claims which fall well outside the common understanding of their terms.

*Id.* at 621, 99 S.Ct. at 1917–18 (footnote omitted). The court notes that other courts addressing similar issues have not found jurisdiction based on 28 U.S.C.A. § 1343(a)(3). *See Schoolcraft v. Sullivan*, 971 F.2d 81, 88 (8th Cir.1992), *cert. denied*, — U.S. —, 114 S.Ct. 902, 127 L.Ed.2d 93 (1994) (quoting *Chapman*, 441 U.S. at 621, 99 S.Ct. at 1918); *Kuehner v. Schweiker*, 717 F.2d 813, 816–17 (3d Cir.1983), *vacated on other grounds, cert. denied*, 469 U.S. 977, 105 S.Ct. 376, 83 L.Ed.2d 312 (1984). Therefore, because jurisdiction cannot be based on section 1343(a)(3), the court shall grant this aspect of Ramirez's motion. This conclusion, however, still leaves open the question of jurisdiction under 28 U.S.C. § 1331.

### C. Jurisdiction Under 28 U.S.C. § 1331

Ramirez argues that this court lacks federal question jurisdiction under 28 U.S.C. § 1331, because a cause of action under 42 U.S.C. § 1983 is not a proper vehicle for Laird's claims. Ramirez asserts that a cause of action under § 1983 is precluded by the comprehensive remedial scheme found in the SSA, not least because the SSA provides explicitly for ongoing administrative oversight of the work of the state agencies, but also because it provides extensive procedures for challenging disability determinations.

Laird argues that Ramirez cannot meet his "heavy burden" to show that Congress intended to preclude a private right of action under § 1983 to protect rights under the SSA. Laird cites several cases in which the courts have permitted § 1983 challenges to various aspects of the SSA or the performance of states under the SSA. She argues further that under the specific facts of this case, there is no preclusion of her collateral

---

5. 28 U.S.C. § 1343(a)(3) states:

To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

claims brought pursuant to § 1983. Laird argues that the Eighth Circuit Court of Appeals has recognized the cause of action found in this case, and, furthermore, that by analogy with Medicare cases, the court should recognize a § 1983 cause of action, because the remedial scheme is not so "carefully tailored" that it is "inconsistent" with a remedy under § 1983. The question therefore becomes whether the SSA provides the exclusive remedy for the wrongs Laird has alleged, thus foreclosing a remedy under § 1983. Before turning to an examination of that question, however, the court will examine the general principles of statutory exclusivity.

### *1. Principles of Exclusivity*

[redacted] The United States Supreme Court has identified a number of guiding principles to determine whether one act or statute provides the exclusive remedy for a wrong another enactment also appears to address. One general rule is that the more recent of two conflicting statutes governs. *Watt v. Alaska,* 451 U.S. 259, 266, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981). However, "[i]t is a commonplace of statutory construction that the specific governs the general." *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 384, 112 S.Ct. 2031, 2037, 119 L.Ed.2d 157 (1992). Thus, a specific statute is not controlled or nullified by a general statute, and the more specific statute is given precedence over the more general one, regardless of priority of enactment, absent clear intention otherwise. *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 445, 107 S.Ct. 2494, 2499, 96 L.Ed.2d 385 (1987); *Busic v. United States,* 446 U.S. 398, 406, 100 S.Ct. 1747, 1753, 64 L.Ed.2d 381 (1980); *Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 153, 96 S.Ct. 1989, 1992, 48 L.Ed.2d 540 (1976); *Morton v. Mancari,* 417 U.S. 535, 550–51, 94 S.Ct. 2474, 2482–83, 41 L.Ed.2d 290 (1974); *Preiser v. Rodriguez,* 411 U.S. 475, 489–90, 93 S.Ct. 1827, 1836, 36 L.Ed.2d 439 (1973).

The determination of the exclusiveness of a later enactment over an earlier one therefore often focuses on the specificity of the provisions of the later enactment: The Supreme Court has indicated that precisely drawn, detailed statutes may reflect congressional intent to make the new enactment the exclusive remedy, dispensing with more general remedies available in a prior enactment. *Preiser,* 411 U.S. at 489, 93 S.Ct. at 1836. For example, the availability of a "comprehensive enforcement mechanis[m]" for protection of a federal right may show that Congress has specifically foreclosed a remedy under § 1983. *Golden State Transit Corp. v. Los Angeles,* 493 U.S. 103, 106, 110 S.Ct. 444, 448, 107 L.Ed.2d 420 (1989); *Smith v. Robinson,* 468 U.S. 992, 1005 n. 9, 104 S.Ct. 3457, 3465 n. 9, 82 L.Ed.2d 746 (1984); *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 21–22, 101 S.Ct. 2615, 2627, 69 L.Ed.2d 435 (1981); *Preiser,* 411 U.S. at 489, 93 S.Ct. at 1836. This principle, sometimes called the "*Sea Clammers* doctrine," was articulated in a decision in which the Court held that the existence of express remedies contained in the Federal Water Pollution Control Act (FWPCA) and the Marine Protection, Research, and Sanctuaries Act of 1972 (MPSRA) demonstrated congressional intent to supplant any remedy otherwise available to the plaintiff fishermen under § 1983. *Nat'l Sea Clammers Ass'n,* 453 U.S. at 21, 101 S.Ct. at 2627. The rationale for the Court's conclusion was that Congress would not have passed the later acts with their "own comprehensive enforcement scheme[s]" if plaintiffs could bypass those schemes with § 1983 suits. *Id.* at 19–20, 101 S.Ct. at 2626.[6] The Court wrote that

> [w]hen the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983.... It is hard to believe that Congress intended to preserve the § 1983 right of action when it created

6. The Court has remarked that courts should be as hesitant to infer that Congress intended to authorize evasion of a statute at will as it is hesitant to infer that Congress intended to narrow the scope of a statute. *United States v. United Continental Tuna Corp.,* 425 U.S. 164, 96 S.Ct. 1319, 47 L.Ed.2d 653 (1976).

so many specific statutory remedies [in the FWPCA and MPRSA]....

*Id.* at 20, 101 S.Ct. at 2626. However, the Court in *Sea Clammers* was not confronted with the question of whether a statute's remedies foreclosed § 1983 remedies for violation of rights with an independent source in the Constitution, but only the question of whether the statute's remedies foreclosed § 1983 remedies *for violation of the statute itself, other federal and state statutes, or state common law. Id.* at 19–21, & n. 31, 101 S.Ct. at 2626–27, & n. 31.

The Supreme Court has subsequently cautioned that the statutory framework of the later act must be such that allowing the plaintiff to bring a § 1983 action would actually be inconsistent with Congress' carefully tailored scheme in the new act and that Congress' intent to preclude a § 1983 remedy must be express before a court may conclude that the § 1983 remedy for violation of a federal right is precluded. *Golden State Transit Corp.,* 493 U.S. at 106–07, 110 S.Ct. at 448–49. In *Golden State,* the Court wrote

> The availability of administrative mechanisms to protect the plaintiff's interests is not necessarily sufficient to demonstrate that Congress intended to foreclose a § 1983 remedy. See *Wright [v. Roanoke Redevelopment & Housing Auth.],* 479 U.S. [418], 425–28 [107 S.Ct. 766, 771–73, 93 L.Ed.2d 781 (1987)]; *Cf. Rosado v. Wyman,* 397 U.S. 397, 420 [90 S.Ct. 1207, 1222, 25 L.Ed.2d 442] (1970). Rather, the statutory framework must be such that "[a]llowing a plaintiff" to bring a § 1983 action "would be inconsistent with Congress' carefully tailored scheme." *Smith [v. Robinson],* 468 U.S. [992], 1012 [104 S.Ct. 3457, 3468, 82 L.Ed.2d 746 (1984)]. The burden to demonstrate that Congress has expressly withdrawn the remedy is on the defendant. *See Wright,* 479 U.S., at 423 [107 S.Ct. at 770]; *National Sea Clammers,* 453 U.S., at 21, n. 31 [101 S.Ct. at 2627, n. 31]. " 'We do not lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy' for the deprivation of a federally secured right." *Wright,* 479 U.S., at 423–424 [107 S.Ct., at

770–771] (quoting *Smith v. Robinson,* 468 U.S., at 1012 [104 S.Ct. at 3468] ).

*Id.* at 106–07, 110 S.Ct. at 448–49 (holding that the NLRB gave plaintiffs rights enforceable under § 1983 because the NLRB lacked its own comprehensive enforcement scheme).

The *Golden State Transit* decision has been interpreted by other courts as "synthesiz[ing] prior case law, reaffirming the presumptive availability of a § 1983 remedy for violations of federal statutory rights, but articulating several broad exclusions," finding those exclusions through a two-step analysis. *See, e.g., Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 510, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990); *Albiston v. Maine Comm'r of Human Services,* 7 F.3d 258, 262 (1st Cir.1993); *Arkansas Medical Soc'y, Inc. v. Reynolds,* 6 F.3d 519, 523 (8th Cir.1993). The first step is to determine whether the federal statute creates *rights,* and if it does not, a § 1983 remedy is precluded. *Albiston,* 7 F.3d at 262. The second step is to determine whether Congress has specifically foreclosed private enforcement by providing a comprehensive administrative scheme within the statute itself, thus making a § 1983 remedy inconsistent. *Id.; see also Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 510, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990) (applying two-step *Golden State* analysis to Medicaid statute); *Arkansas Medical Soc'y, Inc. v. Reynolds,* 6 F.3d 519, 523 (8th Cir. 1993) (also applying the two-step analysis to Medicaid statute). These courts have therefore considered *Golden State* as a corollary to the *Sea Clammers* doctrine, without addressing its emphasis on express or explicit statement of congressional intent before finding that § 1983 remedies have been foreclosed.

However, the Supreme Court has further clarified when a comprehensive administrative scheme within a statute forecloses a § 1983 remedy by stating that congressional intent to foreclose § 1983 remedies is apparent only where the other statute's remedial scheme "leaves *no room* for additional private remedies under § 1983." *Suter v. Artist M.,* 503 U.S. 347, 360 n. 11, 112 S.Ct. 1360, 1368 n. 11, 118 L.Ed.2d 1 (1992) (Emphasis added; citing *Smith v. Robinson,* 468

U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984); *Sea Clammers,* 453 U.S. 1, 101 S.Ct. 2615). In *Suter,* the Court stated that the decision in *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), was the first in which it had established that § 1983 is available as a remedy for violations of federal statutes as well as for constitutional violations. *Suter,* 503 U.S. at 355, 112 S.Ct. at 1366. The Court then noted that § 1983 remedies are not available in the two specific circumstances identified in *Golden State:* either where the statute does not create enforceable rights, privileges, or immunities within the meaning of § 1983, or where Congress has foreclosed such enforcement of the statute in the enactment itself. *Id.* (without citing *Golden State* for this proposition, however). In an even more recent decision, the Supreme Court has concluded that cases in which congressional intent to foreclose a § 1983 remedy may be inferred from a comprehensive remedial scheme are the "exceptional cases," because "§ 1983 remains a generally and presumptively available remedy for claimed violations of federal law." *Livadas v. Bradshaw,* — U.S. —, —, 114 S.Ct. 2068, 2083, 129 L.Ed.2d 93 (1994).

The principles drawn here from the *Golden State Transit, Suter,* and *Livadas* decisions are in accord with another applicable principle articulated by the Supreme Court, which is that a later statute will not be held to have implicitly repealed or preempted an earlier one unless there is a "clear repugnancy" between the two. *United States v. Fausto,* 484 U.S. 439, 452–53, 108 S.Ct. 668, 676–77, 98 L.Ed.2d 830 (1988) (citing *Georgia v. Pennsylvania R. Co.,* 324 U.S. 439, 456–57, 65 S.Ct. 716, 725–26, 89 L.Ed. 1051 (1945); *Wood v. United States,* 16 Pet. 342, 362–63 [41 U.S. 342, 362–63, 10 L.Ed. 987] (1842)).[7] The Court requires "clear repugnancy," because repeals by implication are not favored. *Crawford Fitting Co.,* 482

U.S. at 442, 107 S.Ct. at 2497; *Rodriguez v. United States,* 480 U.S. 522, 524, 107 S.Ct. 1391, 1392, 94 L.Ed.2d 533 (1987); *American Bank & Trust Co. v. Dallas County,* 463 U.S. 855, 868, 103 S.Ct. 3369, 3377, 77 L.Ed.2d 1072 (1983); *United States v. Will,* 449 U.S. 200, 221, 101 S.Ct. 471, 483, 66 L.Ed.2d 392 (1980); *Allen v. McCurry,* 449 U.S. 90, 99, 101 S.Ct. 411, 417, 66 L.Ed.2d 308 (1980); *Cantor v. Detroit Edison Co.,* 428 U.S. 579, 597 n. 37, 96 S.Ct. 3110, 3121 n. 37, 49 L.Ed.2d 1141 (1976); *Radzanower,* 426 U.S. at 154, 96 S.Ct. at 1993.[8] To put it another way, "in the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable." *St. Martin Evangelical Lutheran Church v. South Dakota,* 451 U.S. 772, 788, 101 S.Ct. 2142, 2151, 68 L.Ed.2d 612 (1981) (quoting *Mancari,* 417 U.S. at 550, 94 S.Ct. at 2482); *see also Watt v. Alaska,* 451 U.S. at 266, 101 S.Ct. at 1678; *Tennessee Valley Auth. v. Hill,* 437 U.S. 153, 190, 98 S.Ct. 2279, 2299, 57 L.Ed.2d 117 (1978). However, statutes are not to be read as irreconcilably conflicting without seeking to ascertain the *actual intent of Congress,* and that intent must be "clear and manifest." *Watt v. Alaska,* 451 U.S. at 266, 101 S.Ct. at 1678; *see also Rodriguez v. United States,* 480 U.S. at 524, 107 S.Ct. at 1392 (intent to repeal must be clear and manifest). Courts are therefore required to read both statutes to give effect to each if courts can do so while preserving the sense and purpose of both statutes. *Watt v. Alaska,* 451 U.S. at 266, 101 S.Ct. at 1678; *Mancari,* 417 U.S. at 551, 94 S.Ct. at 2483. Where two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective. *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1017, 104 S.Ct. 2862, 2880, 81 L.Ed.2d 815 (1984); *Administrator, Fed.*

---

7. It is therefore also a canon of statutory construction that indefinite congressional expressions cannot negate plain statutory language and cannot work repeal or amendment by implication. *St. Martin Evangelical Lutheran Church v. South Dakota,* 451 U.S. 772, 788, 101 S.Ct. 2142, 2151, 68 L.Ed.2d 612 (1981).

8. However, the doctrine disfavoring implied repeals does not justify use of unnecessary construction of language or strained readings to avoid repeal, at least where the prior statute is no longer on the books. *Am. Bank & Trust Co. v. Dallas County,* 463 U.S. 855, 868, 103 S.Ct. 3369, 3377, 77 L.Ed.2d 1072 (1983).

*Aviation Admin. v. Robertson,* 422 U.S. 255, 266, 95 S.Ct. 2140, 2148, 45 L.Ed.2d 164 (1975); *Mancari,* 417 U.S. at 551, 94 S.Ct. at 2483. With these general principles in mind, the court now turns to the question of whether the SSA is the exclusive remedy for Laird's claims, thus foreclosing a § 1983 remedy.

### 2. The SSA and § 1983 causes of action

In support of her claim that Titles II and XVI do not preclude § 1983 causes of action, Laird points to a number of cases in which courts have concluded that a § 1983 cause of action was available to pursue claims arising from other provisions of the SSA. For example, in *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the Supreme Court considered the availability of a § 1983 cause of action to compel proper payment of AFDC benefits under 42 U.S.C. § 602(a). The court cited *Rosado v. Wyman,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), and *Edelman v. Jordan,* 415 U.S. 651, 675, 94 S.Ct. 1347, 1362, 39 L.Ed.2d 662 (1974), for the proposition that "suits in federal court under § 1983 are proper to secure compliance with the provisions of the Social Security Act on the part of participating states." *Thiboutot,* 448 U.S. at 4–5, 100 S.Ct. at 2504. The principle reason for this conclusion was that the SSA provides no private right of action against a state. *Id.* at 6, 100 S.Ct. at 2505.

In *Wilder,* 496 U.S. at 520–23, 110 S.Ct. at 2523–25, the Supreme Court concluded that the Boren Amendment to the Medicaid Act, 42 U.S.C. § 1396a(a)(13)(A), did not foreclose § 1983 enforcement. The court noted that only in *Sea Clammers,* 453 U.S. at 20, 101 S.Ct. at 2626, and *Smith v. Robinson,* 468 U.S. at 1012, 104 S.Ct. at 3468, had the Court found that a remedial scheme was sufficiently comprehensive to displace the remedy provided by § 1983. *Wilder,* 496 U.S. at 521, 110 S.Ct. at 2523. The Court found that the Medicaid Act contained no comparable provisions for private judicial or administrative enforcement of its provisions, and thus a § 1983 cause of action had not been precluded. *Id.* The Court found that administrative procedures for review of individual

claims for payment were insufficient to foreclose a § 1983 remedy. *Id.* at 523, 110 S.Ct. at 2524.

In *Suter,* 503 U.S. at 359, 112 S.Ct. at 1368, however, the Supreme Court concluded that various provisions of the SSA provided enforcement mechanisms for the "reasonable efforts" clause of 42 U.S.C. § 671(a), which requires the states to have a plan in effect to prevent or eliminate the need for removal of a child from his home and to make it possible for the child to return to his home. The Court found that the Secretary's oversight powers and judicial involvement in the underlying decisions concerning child placement "[w]hile [they] may not provide a comprehensive enforcement mechanism so as to manifest Congress' intent to foreclose remedies under § 1983, ... do show that the absence of a remedy to private plaintiffs under § 1983 does not make the reasonable efforts clause a dead letter." *Id.* at 360–61, 112 S.Ct. at 1368–69. However, the telling point for the Court in *Suter* was that the statutory provision sought to be enforced via § 1983 did not create an enforceable right, and therefore a § 1983 cause of action was not available. *Id.* at 361–64, 112 S.Ct. at 1369–70.

By contrast, the Eighth Circuit Court of Appeals found that a § 1983 cause of action was available to enforce the "equal access" provisions of the Boren Amendment to the Medicaid statute, 42 U.S.C. § 1396a(a)(13)(A). *Arkansas Medical Soc'y, Inc. v. Reynolds,* 6 F.3d 519, 528 (8th Cir. 1993). Relying on the two-prong analysis found in the *Golden State* decision, and the conclusions of the Supreme Court in *Wilder,* 496 U.S. at 520–23, 110 S.Ct. at 2523–25, the court found that the provisions embodied enforceable rights, and that no remedial scheme in the statute foreclosed the § 1983 cause of action. *Id.* at 528, 110 S.Ct. at 2527. Again, in *Howe v. Ellenbecker,* 8 F.3d 1258 (8th Cir.1993), the Eighth Circuit Court of Appeals held that under *Suter* and *Wilder,* Title IV–D of the SSA, which deals with child support enforcement, did not foreclose § 1983 remedies. *Howe,* 8 F.3d at 1262–63. Similarly, in considering whether *Suter* overruled *Wilder,* the Sixth Circuit Court of Ap-

peals upheld a § 1983 cause of action to enforce the Boren Amendment. *Wood v. Tompkins*, 33 F.3d 600, 606, 612 (6th Cir. 1994). The court concluded that *Suter* was consistent with *Wilder*, because both rely on what has come to be known as the *Golden State* two-prong analysis. *Id.* at 606. The Sixth Circuit Court of Appeals then determined oversight by the Secretary had never been enough to constitute a remedial scheme so comprehensive as to foreclose a § 1983 remedy. *Id.* at 612. The First Circuit Court of Appeals also found that, although courts had been troubled by difficulties in reconciling post-*Thiboutot* cases, including *Suter*, that there was no particular difficulty in fitting all such cases within the *Golden State* analysis, and thus concluded that under these cases § 1983 causes of action are available to enforce Title IV-A and Title IV-D of the SSA, which deal with child support enforcement. *Albiston v. Maine Comm'r of Human Serv.*, 7 F.3d 258, 269 (1st Cir.1993).

However, none of these cases involving § 1983 claims deal specifically with Title II or Title XVI of the SSA, the provisions in question here. Title II of the SSA was, however, the focus of the decision of the Supreme Court in *Weinberger v. Salfi*, 422 U.S. 749, 756–62, 95 S.Ct. 2457, 2462–65, 45 L.Ed.2d 522 (1975). In that decision, the Court held that 42 U.S.C. § 405(g) provides the only way to seek judicial enforcement of rights under Title II of the SSA *against federal defendants. Id.*[9] Only federal defendants had been sued in that case. *Id.* at 752–53, 95 S.Ct. at 2460–61. Furthermore, § 405(h), which makes § 405(g) the exclusive remedy under Title II, reads:

No action *against the United States, the Secretary, or any officer or employee thereof* shall be brought under [28 U.S.C.

§ 1331 *et seq.* ] to recover on any claim arising under [Title II of the SSA].

*See Schoolcraft v. Sullivan*, 971 F.2d 81, 88 (8th Cir.1992) (emphasis added). The Eighth Circuit Court of Appeals has held that "[t]his provision expressly applies only to officials of the United States." *Id.*

In two recent cases, the Eighth Circuit Court of Appeals has found that claims under these provisions of the SSA were enforceable against federal defendants through remedies provided within the statute itself. In the more recent of these decisions from the Eighth Circuit Court of Appeals, *Titus v. Sullivan*, 4 F.3d 590 (8th Cir.1993), although the conduct of the state agency involved in this litigation, Iowa Disability Determination Service Bureau, was also in question, suit was only brought against the federal defendant, the Secretary of Health and Human Services. *Titus*, 4 F.3d at 592. Again, the court found that § 405(g) provided for enforcement of the plaintiffs' claims. *Id.* at 593. Those claims, which bear a stark resemblance to those brought in the present lawsuit, were as follows:

[P]laintiffs state that the relief sought is not an award of benefits for any class member, but rather is for declaratory and injunctive relief that would require the Secretary to utilize proper standards and procedures in the disability determination process. The plaintiffs also specifically aver that irreparable harm is caused both by the Secretary's policies and the delay from the exhaustion requirement. The pleadings specifically state that persons who are denied disability benefits commonly are deprived of most or all of the income required to secure basic necessities. Thus, plaintiffs' complaint, on its face, avers suf-

---

9. The decision of the First Circuit Court of Appeals in *Lynch v. Dukakis*, 719 F.2d 504 (1st Cir.1983), suggests that the holding of *Weinberger v. Salfi* entirely precludes § 1983 actions:

[I]n *Weinberger v. Salfi*, 422 U.S. 749, 756–62, 95 S.Ct. 2457, 2462–65, 45 L.Ed.2d 522 (1975), the Court found that 42 U.S.C. § 405(h) precludes actions to enforce rights under Title II of the Act. Section 405(h) says in so many words that a person can bring suit in federal court to enforce Title II only by way of the judicial review provisions of Title II,

which means in effect under 42 U.S.C. § 405(g).

*Lynch*, 719 F.2d at 510. The court contrasted the conclusion in *Weinberger v. Salfi* with the case before it, which had been brought against the governor of Massachusetts and various state officials, not on the basis that state rather than federal defendants had been sued, but on the basis that the SSA provision before it, 42 U.S.C. § 671(b) "in no way purports to limit the availability of relief under any other provision." *Id.*

ficient facts to confer subject matter jurisdiction on the district court.

*Id.* at 593. The court found that imposition of an exhaustion requirement on such claims was inappropriate, and the court found subject matter jurisdiction and a viable claim under 42 U.S.C. § 405(g). *Id.* Presumably because no state defendant was present, the court did not consider whether a § 1983 claim was also available.

In the earlier of the two decisions from the Eighth Circuit Court of Appeals, however, state defendants were also sued. *Schoolcraft v. Sullivan,* 971 F.2d 81 (8th Cir.1992). In *Schoolcraft,* the plaintiffs in a class action challenged "the procedures and standards applied by defendants to disability claims involving chronic alcoholism or some other drug dependency" under Title II of the SSA, 42 U.S.C. § 401 *et seq. Schoolcraft,* 971 F.2d at 83. The defendants included the director of the Minnesota Disability Determination Services, which made the initial disability determinations. *Id.* The relief sought was not benefits, but a ruling that defendants must follow the same standards at each stage of review of the disability determination. *Id.* at 84. The court found that the causes of action could be asserted against the federal defendants through the judicial review provisions of 42 U.S.C. § 405(g) even though the parties had not exhausted administrative procedures. *Id.* at 85.

The court, citing *Bowen v. City of New York,* 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986), found that administrative exhaustion was not required where: 1) the issues were entirely collateral to the claim for benefits; 2) the injury could not be remedied by a retroactive payment; and 3) exhaustion would be futile. *Schoolcraft,* 971 F.2d at 85. The court found that, even though the claim for proper procedures and standards might be intertwined with a claim for benefits, it was nonetheless collateral to the benefits claim. *Id.* at 86. The court then found that the claimants had made sufficient showing of "irreparable harm," because retroactive benefits would not correct the damage done by the denial of benefits for the very necessities of life. *Id.* Finally, the court determined that exhaustion of adminis-

trative remedies would be futile, because exhaustion would not correct systemic errors at the initial and reconsideration stages of the administrative process. *Id.* at 87; *see also Johnson v. Shalala,* 2 F.3d 918, 922–23 (9th Cir.1993) (although mistakes in application of procedures can be corrected within administrative appeals system, challenges to DDS disability determination procedures themselves cannot be redressed by exhausting administrative procedures). Thus, the court in *Schoolcraft* found that § 405(g) of the statute in question provided a remedy against federal defendants for claims almost identical to those stated by Laird and the class she seeks to represent in this case.

The court in *Schoolcraft* then turned to the question of federal question jurisdiction over claims against the state defendants. *Id.* at 88–89. The court wrote:

> [T]he allegation is made that the state defendants, acting under color of state law, violated the federal regulations and applicable federal law (as well as the United States Constitution). Under these circumstances, although plaintiffs do not expressly allege a violation under 42 U.S.C. § 1983 (1988), we find federal question jurisdiction sufficiently pled under section 1331. *See Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980).

*Id.* at 88. The court rejected the argument of the state defendants that 42 U.S.C. §§ 405(h) & (g) barred federal question jurisdiction against them, finding that these provisions expressly applied only to federal officials, and that, "although DDS is responsible for carrying out the Secretary's regulations and policies, it operates pursuant to state statutory authority." *Id.* The court then concluded that

> [c]laimants allege that these state officers in their official capacities, acting under color of state law, violated federal law and the United States Constitution by failing to apply the proper criteria. On this basis plaintiffs properly assert federal question jurisdiction under section 1331.

*Id.* at 89.

Plaintiff asserts that the decision in *Schoolcraft* implies the availability of a § 1983 cause of action against state defen-

dants. Defendant, on the other hand, reads the case as inapposite, because the court did not consider the question of whether provisions of the SSA precluded a remedy under § 1983. The court does not find that *Schoolcraft* authorizes a § 1983 remedy against state defendants under Titles II or XVI of the SSA pursuant to § 1983, nor does it support a contention that these provisions preclude a § 1983 cause of action. However, the basis upon which the court in *Schoolcraft* found federal question jurisdiction over the state defendants is not entirely clear. It is nonetheless clear that, contrary to the respective positions taken by the parties here, *Schoolcraft* neither authorizes nor precludes a § 1983 action in this litigation.

Laird has also identified for the court the decision of the United States District Court for the District of Oregon in *Sorenson v. Concannon,* No. 94–874–JO, 1995 WL 356245 (D.Or. filed Nov. 17, 1994), as being directly on point. Although it is by no means controlling authority, the decision does address points critical in the present litigation, albeit somewhat briefly. In that decision, the district judge found that

> the SSA remedial scheme only applies to the recovery of benefits. Therefore, Plaintiffs cannot receive their desired declaratory and equitable relief through the present SSA remedial scheme. Furthermore, the Supreme Court in *Maine v. Thiboutot,* 448 U.S. 1 [100 S.Ct. 2502, 65 L.Ed.2d 555] (1980), acknowledges that "the SSA affords no private right of action against a state" and " 'suits in federal court under § 1983 are proper to secure compliance with the provisions of the Social Security Act on the part of participating States.' " *Id.* at 4–6 [100 S.Ct. at 2504–05] [citations omitted] (holding that claimants could enforce fed-

eral conditions of the SSA against state officials under § 1983).

*Sorenson,* slip op. at 32. The court had previously concluded that, although state defendants in Oregon's version of the Iowa DDSB were governed by federal rules and regulations in making disability determinations, they acted under "color of state law" both because their authority came from a state statute, and because the authority of the state was exerted in the exercise of their activities. *Id.,* slip op. at 28–30.

Defendants assert that in *Schweiker v. Chilicky,* 487 U.S. 412, 428, 108 S.Ct. 2460, 2470, 101 L.Ed.2d 370 (1988), the Supreme Court held that the remedial scheme in Title II and Title XVI was sufficiently comprehensive to bar § 1983–style claims. However, *Chilicky* involved a *Bivens* [10] action against *federal* defendants. *Chilicky,* 487 U.S. at 423, 108 S.Ct. at 2467. Although a *Bivens* action is in many respects comparable to a § 1983 claim, the SSA does indeed provide a remedy against federal defendants, in § 405(g), obviating any need for such an action. *Chilicky* does not suggest that a § 1983 claim cannot be brought against state defendants for alleged wrongs arising under the SSA.

### 3. *Preliminary requirements for § 1983 causes of action*

The court finds that before it may even address the question of whether Laird's § 1983 claims are precluded by provisions of the SSA, it must consider two requirements for any § 1983 cause of action. The first is the "under color of state law" requirement, and the second is the "person" requirement.

Section 1983 provides a remedy against "any person" who, "under color of state law," deprives another of rights pro-

10. In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 397, 91 S.Ct. 1999, 2005, 29 L.Ed.2d 619 (1971), the United States Supreme Court authorized a direct cause of action for damages against federal officials based upon a deprivation of constitutional rights. *See also Fuller v. Secretary of Defense of the United States,* 30 F.3d 86, 88 (8th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 583, 130 L.Ed.2d 497 (1994); *Krueger v. Lyng,* 927 F.2d 1050, 1053 (8th Cir.1991). A *"Bivens"* action is sometimes referred to as a federal law analogue to an action

under 42 U.S.C. § 1983. *Vennes v. An Unknown Number of Unidentified Agents of the United States,* 26 F.3d 1448, 1452 (8th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 721, 130 L.Ed.2d 627 (1995). In *Bivens,* the Court specified two exceptions to the availability of a direct cause of action for damages: where Congress has provided an alternative remedy, or where there are "special factors counselling hesitation in the absence of affirmative action by Congress." *Krueger,* 927 F.2d at 1053 (citing *Bivens,* 403 U.S. at 396–97, 91 S.Ct. at 2004–05).

tected by the Constitution. *Collins v. City of Harker Heights, Texas,* 503 U.S. 115, 120, 112 S.Ct. 1061, 1065–66, 117 L.Ed.2d 261 (1992).[11] Although the state defendant here makes disability determinations pursuant to *federal* law, and the mandates of federal regulations and procedures, he is nonetheless acting "under color of state law." The DDSB is a division of the Iowa Department of Education, which is established pursuant to Iowa Code ch. 256. Furthermore, the DDSB exerts the authority of the state in enforcing the law. *United States v. Price,* 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 1157 n. 7, 16 L.Ed.2d 267 (1966) (the "color of state law" requirement of section 1983 "has consistently been treated as the same thing as the 'state action' requirement of the Fourteenth Amendment"); *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941) (relevant inquiry for "color of state law" requirement focuses not on whose law is being implemented, but rather on whether the authority of the state was exerted in enforcing the law); *Sorenson v. Concannon,* No. 94–874–JO, slip op. at 29–30 (D.Or. filed Nov. 17, 1994).

■ Turning to the second of these concerns, a suit against a state official in his or her official capacity is, for all practical purposes, a suit against the state, and the state is not a "person" within the meaning of § 1983. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Brandon v. Holt,* 469 U.S. 464, 471, 105 S.Ct. 873, 877, 83 L.Ed.2d 878 (1985). As such, it is no different from a suit against the. State itself. *See, e.g., Kentucky v. Graham,* 473 U.S. 159, 165–166, 105 S.Ct. 3099, 3104–3105, 87 L.Ed.2d 114 (1985); *Monell, supra,* at 690, n. 55 [98 S.Ct. at 2036, n. 55].")). At oral arguments, the court *sua sponte* raised the issue of whether this suit could be maintained pursuant to § 1983 against Ramirez in his official capacity. Counsel for plaintiff quite correctly responded that the propriety of the present § 1983 action, at least in this regard, was settled in *Will:*

> Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under s 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." *Kentucky v. Graham,* 473 U.S., at 167, n. 14, 105 S.Ct., at 3106, n. 14; *Ex parte Young,* 209 U.S. 123, 159–160, 28 S.Ct. 441, 453–454, 52 L.Ed. 714 (1908). This distinction is "commonplace in sovereign immunity doctrine," L. Tribe, American Constitutional Law § 3–27, p. 190, n. 3 (2d ed. 1988), and would not have been foreign to the 19th-century Congress that enacted § 1983....

*Will,* 491 U.S. at 71 n. 10, 109 S.Ct. at 2312 n. 10. Because these preliminary requirements for suit under § 1983 present no barriers

---

11. Title 42 U.S.C. § 1983 provides that

 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

 Section 1983 was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. New York City Dep't. of Soc. Serv.,* 436 U.S. 658, 685, 98 S.Ct. 2018, 2033, 56 L.Ed.2d 611 (1978). However, § 1983 provides no substantive rights. *Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 617, 99 S.Ct. 1905, 1916, 60 L.Ed.2d 508 (1979). "[O]ne cannot go into court and claim a 'violation of section 1983'—for section 1983 by itself does not protect anyone against anything." *Id.* Rather, § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution *and laws* [of the United States]." 42 U.S.C. § 1983 (emphasis added); *Maine v. Thiboutot,* 448 U.S. 1, 3, 100 S.Ct. 2502, 2503, 65 L.Ed.2d 555 (1980) ("Constitution and laws" means that § 1983 provides remedies for violations of rights created by federal statute, as well as those created by the Constitution). Nonetheless, "where the 'governing statute provides an exclusive remedy for violations of its terms,'" a remedy under § 1983 is not available. *Pennhurst State Sch. & Hosp. v. Halderman,* 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981); *Foster v. Wyrick,* 823 F.2d 218, 221 (8th Cir.1987) (citing *Pennhurst* ). Therein lies the present dilemma: If the SSA provides the exclusive remedy for violations of its procedures and standards, the SSA forecloses an action pursuant to § 1983 for violation of the SSA.

here, the court turns to the central question, which is whether Laird's § 1983 claims are precluded by the SSA.

### 4. Preclusion of the § 1983 claim in Laird's first cause of action

Because no controlling precedent governs the availability of Laird's § 1983 claims under Titles II and XVI of the SSA, the court must now undertake for itself the task of determining whether such claims are available. The court's inquiry must follow the two-step approach of *Golden State* and subsequent decisions: 1) the court must determine whether the federal statute creates *rights,* and if it does not, a § 1983 remedy is precluded; 2) if the statute does create rights, the court must next determine whether Congress has specifically foreclosed private enforcement by providing a comprehensive administrative scheme within the statute itself, thus making a § 1983 remedy inconsistent. The parties have focused their attention almost exclusively on the second step in this process.

#### a. Enforceable rights?

■■■ The first step of the analysis, however, need not detain the court long. In *Arkansas Medical Society,* the Eighth Circuit Court of Appeals clarified the test for this portion of the inquiry as follows:

> Factors which bear on the resolution of this question include: (a) whether the statutory provision in question was intended to benefit the plaintiff; (b) whether the statute creates a binding obligation on the state government as opposed to merely expressing a congressional preference; and (c) whether the interest asserted by the plaintiff is sufficiently specific and definite as to be within the competence of the judiciary to enforce.

*Arkansas Medical Soc'y,* 6 F.3d at 523 (citing *Golden State,* 493 U.S. at 106, 110 S.Ct. at 448). The provisions of the SSA in question here plainly meet this requirement.

42 U.S.C. § 423 provides that "every individual" who meets the disability requirements of this provision "shall be entitled to disability insurance benefits...." 42 U.S.C. § 423(a)(1). This language identifies plaintiff as an intended beneficiary of the provision and further creates a binding obligation of the government to provide that benefit. *Arkansas Medical Soc'y,* 6 F.3d at 524, 526 (an obligation is binding if its language is "mandatory rather than precatory," citing *Wilder,* 496 U.S. at 512, 110 S.Ct. at 2519). The provisions of the SSA and the regulations promulgated thereunder establish rights sufficiently specific and definite to be within competence of the judiciary to enforce. In *Arkansas Medical Society,* the court found that language referring to "general population" was less nebulous than the "equal access" language enforced in *Wilder. Id.* at 527. The language of the provisions in question here is less nebulous still. *Compare Pennhurst State Sch. & Hosp. v. Halderman,* 451 U.S. 1, 17, 19–20, 101 S.Ct. 1531, 1541, 67 L.Ed.2d 694 (1981) (holding that certain purported "rights" defined by Congress in the Developmentally Disabled Assistance and Bill of Rights Act, 42 U.S.C. §§ 6000–6083, were not enforceable because they were not express conditions for the receipt of federal funds, were too vaguely articulated, were more in the nature of a preference for certain types of treatment for developmentally disabled individuals); *Wood v. Tompkins,* 33 F.3d at 607 (referring to the provisions of § 1396 of the SSA, the court wrote, "[T]here is nothing vague or amorphous about what the statute or corresponding regulations require of participating states. The duties set forth therein do not involve any fuzzy, undefined concepts like 'reasonable efforts.' Rather, these duties involve unambiguous directives that are well within the ability of the judiciary to enforce."). Because the statute in question here provides for enforceable *rights,* the court may proceed to the second stage of the *Golden State* analysis, and consider the SSA's remedial scheme as potentially foreclosing § 1983 claims.

#### b. The remedial scheme of Titles II and XVI

The parties agree that the titles of the SSA in question here do not explicitly foreclose § 1983 remedies. Ramirez, however, argues that the remedial scheme under Titles II and XVI of the SSA, which is undeniably extensive, demonstrates congressional intent to foreclose a § 1983 remedy. Thus it is

necessary for the court to examine that scheme in order to determine whether it precludes § 1983 remedies, or is instead capable of coexistence with § 1983 remedies. This remedial scheme for Title II determinations was succinctly described in *Schoolcraft:*

The initial determination of a claim for disability benefits is made by a state agency pursuant to regulations, guidelines and standards established by the Secretary. 42 U.S.C. §§ 421(a), 421(k)(1), 1383(a) (1988). If the initial determination is adverse, the claimant may request a de novo reconsideration of the claim by the same state agency. 20 C.F.R. § 404.904–.909 (1991). In Minnesota, the Disability Determination Services of the Minnesota Department of Jobs and Training (DDS) has been designated to handle these first two stages of the administrative adjudication process. The DDS acts under the authority and control of the Secretary. 42 U.S.C. §§ 421(a), 421(k)(1), 1383b(a) (1988); 20 C.F.R. §§ 404.1503(a), 416.903(a) (1991). Failure to seek a reconsideration renders the initial decision binding on the claimant. If the reconsideration is adverse, the claimant is entitled to a hearing by the Secretary and may request a de novo hearing before an administrative law judge (ALJ). 42 U.S.C. §§ 405(b)(1), 421(d), 1383(c)(1) (1988); 20 C.F.R. § 404.967–.981 (1991). Failure to request a hearing before an ALJ renders the adverse reconsideration a final decision. If the ALJ's decision is adverse to the claimant, the claimant may appeal that decision, within sixty days, to the Social Security Administration Appeals Council (Appeals Council). A final decision exists once the Appeals Council has denied review or has issued its own decision. After exhausting these remedies, a claimant may file a complaint in federal district court requesting an award of benefits pursuant to section 405(g). See 42 U.S.C. §§ 421(d), 1383(c)(3).

*Schoolcraft,* 971 F.2d at 83–84. In Iowa, the DDSB has been designated under 42 U.S.C. § 421(a) to make the initial determination of disability. Parallel provisions for Title XVI are to be found in 42 U.S.C. §§ 1382, 1383. Further review of the disability determinations of the state agencies is vested in the Secretary of Health and Human Services under 42 U.S.C. §§ 421(c)(1) and (2). Under those provisions, the Secretary monitors compliance of the state disability determinations through "quality assurance reviews." If the Secretary finds "that a state agency is substantially failing to make disability determinations in a manner consistent with [the Secretary's] regulations and other written guidelines," the Secretary may take over the task of making initial disability determinations under either Title II or Title XVI. 42 U.S.C. §§ 421(b)(1), 1383(a). The Secretary is further required to review 50% of the state DDS's determinations of disability under 42 U.S.C. §§ 421(c)(1), (2), and (3).

### c. *The remedial scheme and preclusion*

■ Despite this extensive remedial scheme, however, the court finds no indication of congressional intent to foreclose § 1983 remedies for two very substantial reasons. First, the remedial scheme provides for review of *individual disability determinations,* but does not provide a mechanism for review of systemic procedures and standards, thus it provides no remedy at all for the complaints in question here. *See* 42 U.S.C. §§ 421, 1382–83; *see also Thiboutot,* 448 U.S. at 4–6, 100 S.Ct. at 2504–05 (no private cause of action in SSA for challenge to state actions); *Schoolcraft,* 971 F.2d at 87 (remedial scheme of SSA for individual claims would not correct systemic errors); *Johnson,* 2 F.3d at 922–23 (although mistakes in application of procedures can be corrected within administrative appeals system, challenges to DDS disability determination procedures themselves cannot be redressed in administrative procedures). To put this another way, the absence of a private cause of action within the statute itself takes the SSA outside of the rarefied group of statutes held to foreclose § 1983 actions. *Wilder,* 496 U.S. at 520–523, 110 S.Ct. at 2523–25 (in the statutes in question in *Sea Clammers,* 453 U.S. at 20, 101 S.Ct. at 2626, and *Smith v. Robinson,* 468 U.S. at 1012, 104 S.Ct. at 3468, there were provisions for private judicial or administrative enforcement of their provisions, but none such were to be found in the Medicaid Act, and thus a § 1983

cause of action had not been precluded by the Medicaid Act).

Second, oversight by the Secretary of Health and Human Services has been held to be insufficient to preclude a private cause of action to enforce proper standards and procedures. *Suter*, 503 U.S. at 360–61, 112 S.Ct. at 1368–69 (the Secretary's oversight powers and judicial involvement in the underlying decisions concerning child placement "[w]hile [they] may not provide a comprehensive enforcement mechanism so as to manifest Congress' intent to foreclose remedies under § 1983, ... do show that the absence of a remedy to private plaintiffs under § 1983 does not make the reasonable efforts clause a dead letter."); *Wood v. Tompkins*, 33 F.3d at 612 (oversight by the Secretary has never been enough to constitute a remedial scheme so comprehensive as to foreclose a § 1983 remedy). Thus, the court concludes that the remedial scheme of Titles II and XVI of the SSA do not foreclose a § 1983 cause of action of the kind presented here in Laird's first cause of action. As a consequence of this conclusion, it follows that Laird has stated a cognizable federal question claim giving this court subject matter jurisdiction under 28 U.S.C. § 1331. Ramirez's motion to dismiss must therefore be denied as to this claim.

### 5. *Preclusion of the § 1983 claim in Laird's second cause of action*

Even if the SSA foreclosed a § 1983 cause of action as stated in Laird's first cause of action, it can provide no such foreclosure of the § 1983 claim found in the second cause of action. The rights asserted in Laird's second cause of action spring not from the SSA, but from the Fourteenth Amendment protection of the right to equal protection. Thus, the claims in the second cause of action are "independent," and as such are enforceable under § 1983.

#### a. *Coexistence of remedies*

■ The issue of coexistence of remedies is of particular significance when the statute asserted to preclude the § 1983 remedy does indeed contain an extensive remedial scheme. Where two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective. *Ruckelshaus*, 467 U.S. at 1017, 104 S.Ct. at 2880; *Robertson*, 422 U.S. at 266, 95 S.Ct. at 2148; *Mancari*, 417 U.S. at 551, 94 S.Ct. at 2483. The comprehensiveness of a remedy in a statute, the court concludes, tells nothing about congressional intent to retain other remedies for violation of other rights the new statute does not purport to reach and which existed prior to and independently of enactment of the statute. *See, e.g., Watt v. Alaska*, 451 U.S. at 266, 101 S.Ct. at 1678 (statutes are not to be read as irreconcilably conflicting without seeking to ascertain the actual intent of Congress, and that intent must be "clear and manifest"); *Rodriguez v. United States*, 480 U.S. at 524, 107 S.Ct. at 1392 (intent to repeal must be clear and manifest). Further, the rationale for the "*Sea Clammers* doctrine," that Congress would not have passed later acts with their "own comprehensive enforcement scheme[s]" if plaintiffs could bypass those schemes with § 1983 suits, *Sea Clammers*, 453 U.S. at 19–20, 101 S.Ct. at 2626, is inapplicable where remedies under both § 1983 and another statutes are capable of coexistence. It must be remembered that in *Sea Clammers* the Court was not confronted with the question of whether a statute's remedies foreclosed § 1983 remedies for violation of rights with an independent source in the Constitution, but only the question of whether the statute's remedies foreclosed § 1983 remedies *for violation of the statute itself, other federal and state statutes, or state common law. Sea Clammers*, 453 U.S. at 19–21, & n. 31, 101 S.Ct. at 2626–27 & n. 31.

This court concludes that there is no bypass of the SSA, for example, when § 1983 is used to vindicate federal constitutional claims of violation of the Fourteenth Amendment's guarantee of equal protection or due process. Congress established the remedial scheme of the SSA *to vindicate rights secured by the SSA*, not to vindicate rights secured by the Constitution. Providing a means to vindicate rights secured by the Constitution has always been the purpose of § 1983. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 685, 98 S.Ct. 2018, 2033, 56 L.Ed.2d 611 (1978) (Section 1983 was de-

signed to provide a "broad remedy for violations of federally protected civil rights."). To put it another way, although in circumstances in which the same conduct of the agency or its state designee is at issue in both an SSA claim and a § 1983 claim, it may appear that a plaintiff is being allowed to bypass SSA procedures to address the agency's *conduct* by way of § 1983, the plaintiff pursuing a § 1983 claim is only bypassing SSA procedures not applicable to the *constitutional right* the plaintiff is seeking to vindicate. Although the wrongful conduct may be the same in each case, the wrong each remedy is intended to address is different: one wrong is violation of a statute, the other is violation of federal constitutional rights. Thus, the plaintiff pursuing a § 1983 remedy for a non-SSA right is not doing so simply to gain some procedural advantage by bypassing SSA procedures, *see, e.g., Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 143 (2d Cir.1993) (§ 1983 cannot be used to gain perceived advantages not available to a Title VII claimant, citing *Day v. Wayne County Bd. of Auditors*, 749 F.2d 1199, 1204 (6th Cir.1984)), *cert. denied*, — U.S. ——, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994), but seeking to vindicate a right springing from a different source through the procedures applicable to that right. The court notes that the entire issue of exclusivity or preemption should only arise where two congressional enactments, one more specific than the other, address the same wrong, not when they merely address the same conduct. The court perceives this as a corollary to the "clear repugnance" or "irreconcilability" requirement before a court may find repeal of a statute by implication.

### b. Coexistence of the remedies here

 When two "independent" claims exist, "certainly no inconsistency results from permitting both rights to be enforced in their respective forums." *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378, 99 S.Ct. 2345, 2352, 60 L.Ed.2d 957 (1979) (quoting *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 49–50, 94 S.Ct. 1011, 1020, 39 L.Ed.2d 147 (1974)). Because § 1983 and the SSA administrative and judicial review provisions were intended to remedy violations of different rights, the court concludes

that they are capable of coexistence, and this court must regard each as effective. *Ruckelshaus*, 467 U.S. at 1017, 104 S.Ct. at 2880; *Robertson*, 422 U.S. at 266, 95 S.Ct. at 2148; *Mancari*, 417 U.S. at 551, 94 S.Ct. at 2483. Therefore, Laird has properly stated a § 1983 claim in her second cause of action, which again has the consequence of providing a federal question upon which to found this court's jurisdiction under 28 U.S.C. § 1331.

As to both of Laird's § 1983 claims, Ramirez has failed to carry his "heavy burden" of demonstrating that the SSA forecloses § 1983 enforcement. *Arkansas Medical Soc'y*, 6 F.3d at 524; *see also Wilder*, 496 U.S. at 520–21, 110 S.Ct. at 2523–24. The motion to dismiss must therefore be denied.

### III. CONCLUSION

Ramirez's motion to dismiss for lack of subject matter jurisdiction must be denied. The court concludes first that, as to Laird's first cause of action on behalf of the prospective class, which seeks enforcement of proper standards and procedures, Laird has stated a cognizable claim under § 1983. The statutory provisions in question create enforceable rights, such that a § 1983 action would normally lie. Next, the remedial scheme of the SSA does not preclude a § 1983 remedy for two reasons. First, the remedial scheme provides for review of *individual disability determinations*, but does not provide for class action attacks on systemic procedures and standards, thus it provides no remedy at all for the complaints in question here. To put this another way, the absence of a private cause of action within the statute itself takes the SSA outside of the rarefied group of statutes held to foreclose § 1983 actions. Second, oversight by the Secretary of Health and Human Services has been held to be insufficient to preclude a private cause of action to enforce proper standards and procedures. The claims in the first cause of action pursuant to § 1983 have therefore not been precluded by the SSA itself.

As to Laird's second claim of violation of equal protection rights, the court concludes that this claim is founded on an "independent" source, the Constitution itself, and that

the SSA does not purport to protect those constitutional rights. Therefore, the SSA remedies and § 1983 remedies may coexist.

Because neither claim pursuant to § 1983 is precluded, Laird has stated federal question claims upon which to found this court's subject matter jurisdiction. Ramirez's motion to dismiss for lack of subject matter jurisdiction must therefore be denied in its entirety.

**IT IS SO ORDERED.**