_____

No. 96-1614SI
_____

Diana Dodson,                        *
                                     *
        Plaintiff-Appellant,         *
                                     *
    v.                               *   On Appeal from the United
                                     *   States District Court for
                                     *   the Southern District
Shirley S. Chater, Commissioner      *   of Iowa.
of the Social Security               *
Administration,                      *
                                     *
        Defendant-Appellee.          *

_____

        Submitted: September 11, 1996

            Filed: November 25, 1996
_____

Before RICHARD S. ARNOLD, Chief Judge, HENLEY, Senior Circuit Judge, and
      WOLLMAN, Circuit Judge.
_____

RICHARD S. ARNOLD, Chief Judge.


        Diana Dodson appeals a District Court[1] order affirming the
Commissioner's denial of Dodson's application for Social Security
disability benefits.  We affirm.

_____

        [1]The Hon. Harold D. Vietor, United States District Judge for
the Southern District of Iowa.

I.

At the time of the District Court's decision, the Commissioner of Social Security had consistently denied disability benefits to Dodson.[2] Since the filing of this appeal, however, the Commissioner has found that Dodson is disabled and eligible to receive benefits. We therefore limit our review to the time period between September 12, 1992, when Dodson alleges her disability began, and March 26, 1996, the date the Commissioner found that her disability began.[3]

II.

Diana Dodson is 48 years old and a high school graduate. Her employment experience includes work as a convenience store assistant manager, a cashier/checker, a pizza baker, and, most recently, as a protection control technician[4] in a bank.

In a hearing before an Administrative Law Judge ("ALJ") at the Social Security Administration, she listed several health problems which contribute to her disability. Chief among them were chronic asthma, sinus infections, recurrent urinary tract infections, chronic irritation of the bowel, a severely injured ankle, and pain associated with prior back surgery. Admin. Rec. 40-43. She

---

[2]The Commissioner denied Dodson's application on October 27, 1993, and again, on reconsideration, on December 3, 1993. After a hearing in July 1994, Administrative Law Judge Thomas M. Donahue issued the final decision of the Commissioner, dated September 13, 1994.

[3]Dodson's counsel filed a motion requesting this limitation. We grant the motion but note that it was not required. Since the Commissioner awarded Dodson benefits, an appeal of the prior denial of those benefits is necessarily limited to the time before the award.

[4]A protection control technician performs duties such as running computers and high-speed check sorters. Admin. Rec. 48.

testified that the ankle injury, urinary tract infections, bowel irritation, and asthma interfered most significantly with her ability to work. Her leg had to be elevated much of the day, she required rest breaks when using her inhaler for her asthma, and she had to go to the rest room once or twice every half hour due to her frequent urination and chronic diarrhea. Id. at 40, 46-48.

The ALJ, evaluating Dodson's testimony and medical records and the testimony of a vocational expert, found that Dodson's health problems were not so disabling as to prevent her from working. Id. at 11. The District Court affirmed. Appellant's App. 5. We review the District Court's decision to determine whether the ALJ's decision was supported by substantial evidence on the record as a whole. Baker v. Secretary of Health and Human Servs., 955 F.2d 552, 554 (8th Cir. 1992).

## III.

Dodson challenges the ALJ's finding that her testimony that she was unemployable was not fully credible. Appellant's Br. 18. Dodson argues that the ALJ failed to give proper consideration to her subjective allegations of pain as required by Polaski v. Heckler, 739 F.2d 1320, 1321-22 (8th Cir. 1984) (subsequent history omitted). Under Polaski, an adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not support them. Id. at 1322. But after full consideration of all of the evidence relating to subjective complaints, the adjudicator may discount those complaints if there are inconsistencies in the evidence as a whole. Ibid.

Dodson's hearing testimony regarding her ability to work was at times contradictory. Dodson testified that she did not think she could be employed again in the position she had held at the bank, "because [she] couldn't do all the running that [she] did before." Admin. Rec. 47. During the same proceeding, she also

-3-

testified that, were the bank still operated by its previous owners, she was "sure [she'd] still have the job." Ibid. Though she later dismissed the latter statement as "probably wishful thinking," id. at 49, she also said nothing new had happened to her physically or mentally since she left her job that would make work harder for her than it had been when she was employed. The ALJ concluded that, since Dodson had been able to work while having the exact same impairments she claimed made her unemployable, she was "less than fully credible" regarding her inability to work.[5]

Dodson also challenges the ALJ's decision for "fail[ing] to mention" important medical evidence corroborating her testimony about her employability. Appellant's Br. 22-23. The evidence to which Dodson refers is a one-page form filled out by Dr. R. Hart. Contrary to Dodson's assertion, the ALJ specifically mentioned this piece of evidence by its exhibit number in his opinion, noting that it received particular attention. Admin. Rec. 16.

Presumably, Dodson means to dispute the ALJ's evaluation of that evidence. The ALJ wrote that "no medical source ha[d] suggested [the] notion" that Dodson's ankle condition precluded her from all work. Dodson insists that Dr. Hart indeed suggested such a notion. The form Dr. Hart filled out contains the question, "If unable to work, is inability: temporary [or] permanent[?]" Dr. Hart marked "permanent." Id. at 205.

---

[5]We recognize that, simply because one employer was tolerant in accommodating Dodson's needs, all employers might not be so inclined. From her testimony, it appears that the management of the bank which bought out her original employer was far less understanding; she said they complained about her frequent trips to the rest room. The vocational expert testified, however, that a person in Dodson's condition should qualify for sedentary work. The ALJ is entitled to evaluate her employability based on all this evidence, and his finding can be disturbed only if unsupported by substantial evidence.

The form later contradicts itself.  Although Dr. Hart's check mark in the question quoted above indicates that Dodson was unable to work and that her disability was permanent, another of his check marks points to a different conclusion.  On the immediately preceding line, beside "work capacity," Dr. Hart marked "limited work."  Ibid.  It is impossible to know what Dr. Hart intended to convey.  Considering this ambiguous evidence in light of all the other evidence, it was permissible for the ALJ to conclude that Dodson remained able to work.  While the ALJ did not accept Dodson's subjective evaluation of her ability to work, he also did not reject Dodson's subjective assessment solely because the objective medical evidence failed to support her claim.  See Admin. Rec. 14-17.  His treatment of that evidence was both sensible and proper under Polaski.  739 F.2d at 1322; see 20 C.F.R. § 404.1527(c).

The ALJ also relied upon the testimony of a vocational expert who appeared at Dodson's hearing.  The expert heard all of Dodson's testimony and had reviewed her file.  Relying on Dodson's testimony and referring to the Dictionary of Occupational Titles ("DOT"), the expert testified that a person with Dodson's employment background and physical limitations could work, but would be limited to sedentary work.  Admin. Rec. 55.

In the expert's opinion, Dodson could still perform work like that she had performed at the bank, only "in a way that the DOT normally says that it is performed" -- presumably, without lifting heavy bags of checks or traveling very far without rest.  See id. at 44, 52, 56.  The expert further testified that Dodson was qualified for several clerical positions which were classified in the DOT as "sedentary."  According to the expert, Dodson's need to keep her ankle elevated could usually be readily accommodated in most of these jobs, and most employers normally allowed for sufficient rest periods.

-5-

That different interpretations of Dodson's ability to work were possible does not invalidate the ALJ's conclusions. <u>Oberst v. Shalala</u>, 2 F.3d 249, 250 (8th Cir. 1993) (citing <u>Robinson v. Sullivan</u>, 956 F.2d 836, 838 (8th Cir. 1992)). Since we find those conclusions were supported by medical evidence, the testimony of the vocational expert, and in part by Dodson's own testimony, we will not disturb the ALJ's ruling.

IV.

The ALJ's consideration of Dodson's subjective assessment of her employability was proper under <u>Polaski</u>, 739 F.2d at 1321-22. His conclusion that Dodson was employable, and therefore ineligible for disability benefits, was supported by substantial evidence. The District Court was correct in affirming that decision. We therefore affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.