Paula LAIRD, on her own behalf and on behalf of all others similarly situated, and William Meeks, on his own behalf and on behalf of all others similarly situated, Plaintiffs,

v.

Ted STILWILL, in his official capacity as Director of the Iowa Department of Education, Defendant, and

John J. Callahan, Acting Commissioner of the Social Security Administration, Intervenor/Defendant.

No. C 95–3015–MWB.

United States District Court,
N.D. Iowa,
Central Division.

Oct. 25, 1997.

Thomas A. Krause, Max Schott & Associates, Des Moines, IA, for plaintiffs Paula Laird and William Meeks and the conditionally certified class.

**1346**

Christie J. Scase, Assistant Attorney General, Des Moines, IA, for defendant Ted Stilwill.

Richard G. Lepley, Daphene R. McFerren, Department of Justice, Civil Division, Washington, DC, for defendant John A. Callahan.

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS' MOTIONS TO RECONSIDER JURISDICTION AND TO RECONSIDER ORDER GRANTING PARTIAL SUMMARY JUDGMENT**

BENNETT, District Judge.

### TABLE OF CONTENTS

I. *INTRODUCTION* .................................................. 1346

II. *LEGAL ANALYSIS* ............................................. 1347
   A. *Reconsideration Of Subject Matter Jurisdiction* ......................... 1347
      1. *Applicable standards* ......................................... 1347
      2. *This court's prior decision* .................................. 1348
      3. *The Blessing decision* ...................................... 1350
      4. *Analysis in the wake of Blessing* ............................ 1351
   B. *Reconsideration Of Partial Summary Judgment* ...................... 1353
      1. *Procedural basis and standard of review* ...................... 1353
      2. *This court's prior decision* .................................. 1355
      3. *The defendant's challenge* .................................. 1355
         a. *Deference* .............................................. 1356
         b. *The key threshold question* .............................. 1357
         c. *Agency ruling and the need for acquiescence.* .................... 1357
         d. *IDDSB determination* .................................... 1358

III. *CONCLUSION* ................................................ 1358

How much federal oversight of a state agency administering a federal program precludes a private action pursuant to 42 U.S.C. § 1983 to compel the state agency to comply with federal law? That is the principal question presented in motions renewing challenges to this court's subject matter jurisdiction over this action. In a prior decision, this court held, in part, that federal oversight of a state agency that makes initial disability determinations under Titles II and XVI of the Social Security Act (SSA) was insufficient to preclude a private cause of action pursuant to 42 U.S.C. § 1983 against the director of the state agency to enforce proper standards and procedures.[1] The director of the state agency and the intervenor Acting Commissioner of the Social Security Administration, however-

er, assert that the Supreme Court's recent intervening decision in *Blessing v. Freestone*, —— U.S. ——, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997), requires reconsideration and reversal of that holding. Thus, the court must consider renewed challenges to its subject matter jurisdiction over the plaintiffs' § 1983 claims. Additionally, the defendant and intervenor assert that, in another decision, this court improvidently granted partial summary judgment in favor of the plaintiffs on their claim that the state defendant fails to evaluate properly subjective complaints of pain in making disability determinations under the SSA. Thus, the court is called upon to reconsider not only its jurisdiction to hear the case, but one of its conclusions made in the exercise of that jurisdiction.

---

**1.** This court also held that the remedial scheme for review of individual disability determinations under Titles II and XVI of the SSA was insufficient to preclude a § 1983 action against the state administrator to enforce compliance with proper standards.

## I.  INTRODUCTION

This court has twice reviewed in some detail the background and claims asserted in this litigation, once in ruling on a motion to dismiss for lack of subject matter jurisdiction, *see Laird v. Ramirez,* 884 F.Supp. 1265 (N.D.Iowa 1995) (hereinafter *"Laird I"*), and once in ruling on cross-motions for summary judgment and partial summary judgment. *See Laird v. Stilwill,* 969 F.Supp. 1167 (N.D.Iowa 1997) (hereinafter *"Laird II"*).[2] Thus, only a brief review of the background to this litigation is required here.

This is a class-action lawsuit brought pursuant to 42 U.S.C. § 1983 for declaratory and injunctive relief, not benefits, by persons initially determined by the Iowa Disability Determination Service Bureau (IDDSB) not to be disabled within the meaning of Titles II or XVI of the SSA. Count I of the class-action complaint seeks relief from disability evaluations by the state defendant that are in violation of the SSA, pertinent regulations, and controlling federal judicial decisions, in four specified respects: evaluation of subjective pain allegations; credibility determinations; use of qualified vocational specialists; and documentation and completeness of assessments of residual functional capacity.  Count II seeks relief from disparate treatment of applicants for disability benefits at the state and federal administrative levels, which plaintiffs allege has created two classes of applicants based on their resources and stamina to pursue federal administrative procedures, in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution.

In *Laird I,* 884 F.Supp. at 1265, the court found it had subject matter jurisdiction over both § 1983 claims, despite provisions for appeal and review of individual disability determinations and federal oversight of the state agency.  In *Laird II,* 969 F.Supp. at 1167, the court granted partial summary judgment in favor of the plaintiffs on that part of Count I in which they claim that the

state defendant fails to evaluate subjective complaints of pain in accordance with Eighth Circuit precedent.  The state and federal defendants have moved the court to reconsider both of these rulings.

## II.  LEGAL ANALYSIS

Although the defendants' renewed challenges to jurisdiction over any § 1983 claims and the grant of partial summary judgment are couched as motions to "reconsider," the court finds that different standards are applicable to the motions based on precisely what it is the court is asked to reconsider.  Therefore, the court will consider the standards for and merits of these motions separately, beginning with the renewed challenge to the court's power to hear the case at all.  If the court finds that it has subject matter jurisdiction over the plaintiffs' § 1983 claims, the defendants' assertions notwithstanding, the court will then take up the standards for and merits of the motion to "reconsider" the grant of partial summary judgment in favor of the plaintiffs.

### A.  Reconsideration Of Subject Matter Jurisdiction

The defendants have asked the court to reconsider its conclusion that the SSA does not preclude a private action pursuant to 42 U.S.C. § 1983 to compel a state agency to apply proper standards—embodied in the SSA itself, regulations promulgated under the SSA, and case law of this circuit—to initial determinations of disability under Titles II and XVI of the SSA. Indeed, at the hearing on the cross-motions for summary judgment and partial summary judgment, the court *sua sponte* invited the parties to address the effect, if any, on this case of the Supreme Court's recent decision in *Blessing v. Freestone,* —— U.S. ——, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997), which considered the viability of § 1983 claims to enforce provisions of Title IV–D of the SSA. Although the defendants' motions to "reconsider" subject matter jurisdiction followed in due course, the defendants do not discuss the standards

---

**2.**  The original named defendant was Al Ramirez, then director of the Iowa Department of Education. However, prior to the second decision in this case, Ted Stilwill replaced Mr. Ramirez as the director of the Iowa Department of Education, and consequently, pursuant to FED. R.CIV.P. 25(d)(1), he also automatically replaced Mr. Ramirez as a defendant in this case.  Ted Stilwill is referred to herein as the "state defen-

dant."  Shortly after the decision in *Laird I* was filed, the Commissioner of the Social Security Administration, Shirley Chater, was granted leave to intervene as a party defendant.  John J. Callahan has since become the Acting Commissioner of the Social Security Administration. John Callahan is referred to herein as the "federal defendant."

applicable to such motions and do not identify any rule of civil procedure as the basis for their motions. Thus, the first question is, by what standards are these motions to "reconsider" to be decided?

### 1. Applicable standards

■ As this court observed in *Laird I*, the federal courts " 'are not courts of general jurisdiction and have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto.' " *Laird I*, 884 F.Supp. at 1270 (quoting *Marine Equip. Management Co. v. United States*, 4 F.3d 643, 646 (8th Cir. 1993)). Because of their limited jurisdiction, federal courts have a duty to examine the substantiality of the federal claim throughout the litigation, and must dismiss all claims if the federal claim proves patently meritless even after the trial begins. *Id.* at 1270–71 (citing *Pioneer Hi–Bred Int'l v. Holden Found. Seeds, Inc.*, 35 F.3d 1226, 1242 (8th Cir.1994); *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir.1987)). Furthermore, because of this continuing duty to examine its subject matter jurisdiction, the court concludes that revisiting its subject matter jurisdiction cannot be foreclosed, even by a prior decision upholding subject matter jurisdiction, if the defendants come forward with some adequate basis for mounting a renewed challenge. The defendants' renewed challenge to subject matter jurisdiction is based on the *Blessing* decision, which was handed down only some time after this court's ruling in *Laird I* Thus, to the extent the *Blessing* decision changes the legal analysis and, more importantly, the outcome of that analysis, it certainly provides an adequate basis for the court now to reconsider subject matter jurisdiction over the plaintiffs' § 1983 claims.

Nonetheless, the court finds that, as in *Laird I*, the defendants still mount only a purely "legal" challenge to subject matter jurisdiction, based on *Blessing* and *statutory* dictates for federal oversight of the state agency's disability determinations, not a factual challenge based on how oversight is actually conducted. *Cf. Laird I*, 884 F.Supp. at 1271. As before, the court concludes that the defendants have made only a "facial" challenge to subject matter jurisdiction pursuant to FED.R.CIV.P. 12(b)(1): Their renewed challenge to subject matter jurisdiction is still entirely on the ground that the plaintiffs cannot, as a matter of law, pursue their claims under 42 U.S.C. § 1983, and therefore there is no federal question basis for subject matter jurisdiction in this case. *Cf. Laird I*, 884 F.Supp. at 1273. Once again, the court concludes that no adjudication of facts is necessary to address this challenge. The court will therefore restrict itself to the face of the pleadings, and afford the plaintiffs, as the non-moving parties, the same protections they would enjoy defending against a motion brought under Rule 12(b)(6). *Laird I*, 884 F.Supp. at 1273 (citing *Osborn v. United States*, 918 F.2d 724, 729 n. 6 (8th Cir.1990)).

### 2. This court's prior decision

In *Laird I*, after surveying the remedial scheme and the scope of federal oversight under Titles II and XVI of the SSA, this court concluded that the plaintiffs' § 1983 claim in Count I, the claim to enforce proper standards under the SSA, was not precluded:

Despite this extensive remedial scheme, however, the court finds no indication of congressional intent to foreclose § 1983 remedies for two very substantial reasons. First, the remedial scheme provides for review of *individual disability determinations,* but does not provide a mechanism for review of systemic procedures and standards, thus it provides no remedy at all for the complaints in question here. *See* 42 U.S.C. §§ 421, 1382–83; *see also [Maine v.] Thiboutot,* 448 U.S. [1,] 4–6 [100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980) ] (no private cause of action in SSA for challenge to state actions); *Schoolcraft [v. Sullivan],* 971 F.2d [81,] 87 [ (8th Cir. 1992) ] (remedial scheme of SSA for individual claims would not correct systemic errors)[, *cert. denied,* 510 U.S. 1081, 114 S.Ct. 902, 127 L.Ed.2d 93 (1994) ]; *Johnson [v. Shalala],* 2 F.3d [918,] 922–23 (9th Cir.1993) (although mistakes in application of procedures can be corrected within administrative appeals system, challenges to DDS disability determination procedures themselves cannot be redressed in administrative procedures). To put this another way, the absence of a private cause of action within the statute itself takes the SSA outside of the rarefied group of statutes held to foreclose § 1983 actions. *Wil-*

*der [v. Virginia Hosp. Ass'n]*, 496 U.S. [498,] 520–23 [110 S.Ct. 2510, 2523–25 110 L.Ed.2d 455 (1990) ] (in the statutes in question in *[Middlesex County Sewerage Auth. v. National] Sea Clammers [Ass'n]*, 453 U.S. [1,] 20 [101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981) ], and *Smith v. Robinson*, 468 U.S. [992,] 1012 [104 S.Ct. 3457, 3468–69, 82 L.Ed.2d 746 (1984) ], there were provisions for private judicial or administrative enforcement of their provisions, but none such were to be found in the Medicaid Act, and thus a § 1983 cause of action had not been precluded by the Medicaid Act).

Second, oversight by the Secretary of Health and Human Services has been held to be insufficient to preclude a private cause of action to enforce proper standards and procedures. *Suter [v. Artist M.]*, [503 U.S. 347] 359–62, 112 S.Ct. [1360,] 1368–69 [118 L.Ed.2d 1 (1992) ] (the Secretary's oversight powers and judicial involvement in the underlying decisions concerning child placement "[w]hile [they] may not provide a comprehensive enforcement mechanism so as to manifest Congress' intent to foreclose remedies under § 1983, ... do show that the absence of a remedy to private plaintiffs under § 1983 does not make the reasonable efforts clause a dead letter."); *Wood v. Tompkins*, 33 F.3d [600,] 612 [ (6th Cir.1994) ] (oversight by the Secretary has never been enough to constitute a remedial scheme so comprehensive as to foreclose a § 1983 remedy). Thus, the court concludes that the remedial scheme of Titles II and XVI of the SSA does not foreclose a § 1983 cause of action of the kind presented here in Laird's first cause of action. As a consequence of this

conclusion, it follows that Laird has stated a cognizable federal question claim giving this court subject matter jurisdiction under 28 U.S.C. § 1331. Ramirez's motion to dismiss must therefore be denied as to this claim.

*Laird I*, 884 F.Supp. at 1284–85 (emphasis in the original). Later in the decision, this court concluded that the § 1983 claim stated in Count II of the complaint, an action based on alleged denial of the constitutional right to equal protection in disability determinations under the SSA, also was not precluded by the SSA. *Id.* at 1285–86. The court concluded that the rights in question spring not from the SSA, but from the Fourteenth Amendment to the United States Constitution. *Id.* at 1285. The court concluded further that remedies for constitutional violations could coexist with remedies for statutory violations of the SSA, and each must therefore be regarded as effective. *Id.* at 1286. Thus, the court concluded that the plaintiffs had properly stated § 1983 claims in both counts of their complaint. *Id.*

Although the state defendants acknowledge the court's holding as to both counts of the complaint, the court has perused the motions and supporting briefs of the defendants in vain for any renewed challenge to the court's subject matter jurisdiction over Count II of the complaint. Thus, the defendants' renewed challenge is only to jurisdiction over Count I of the complaint, and that challenge appears to be on only the limited ground that the federal oversight of the state agency under Titles II and XVI is sufficient to preclude a private § 1983 action to compel the state defendant to apply proper standards.[3] That challenge rests on the Su-

---

**3.** In fact, the state defendants concede that, as this court has held, "the remedial scheme contained within the Social Security Act does not directly 'provide a mechanism for review of systematic [sic] procedures and standards' adopted by SSA and applied by the state DDSs.' " Memorandum In Support Of Defendant Ted Stilwill's Motion To Reconsider Jurisdiction (State Defendant's Brief), p. 7 (misquoting *Laird I*, 884 F.Supp. at 1284, which referred to "systemic" not "systematic" procedures and standards). The state defendant contends that such a mechanism is available as against the federal defendant pursuant to 42 U.S.C. § 405(g). Nonetheless, to the extent the defendants may be asking the court to reconsider its conclusion that the remedial scheme for individual disability determinations is itself sufficient to preclude a § 1983 claim, the court finds no reason to retreat from its conclusion in *Laird I*. The court reiterates its

conclusion that the remedial scheme provides for review of *individual disability determinations*, but does not provide a mechanism for review of systemic procedures and standards *by state defendants;* thus, it provides no remedy at all for the complaints in question here. *Laird I*, 884 F.Supp. at 1284. Consequently, Titles II and XVI of the SSA do not belong to the rarefied group of statutes that can be held to foreclose § 1983 actions on this ground. *Id.*

Furthermore, although the defendants make extensive arguments that the court would not have subject matter jurisdiction over claims against the federal defendants, because such claims pursuant to 42 U.S.C. § 405(g) have not been exhausted, these arguments are alternatives in the event the court determines it does not have subject matter jurisdiction over the plaintiffs' § 1983 claims against the state defendant. Con-

preme Court's decision in *Blessing,* which is the subject of the next subsection.

### 3. The Blessing decision

In *Blessing,* the Supreme Court *did not* hold that federal oversight under Titles II and XVI of the SSA was sufficient to preclude a private action pursuant to § 1983 to enforce appropriate standards. Rather, in *Blessing,* the Court concluded that federal oversight under a different portion of the SSA, Title IV–D, which pertains to the actions of state agencies to obtain child support payments, was *insufficient* to preclude a § 1983 action to enforce proper actions. *See Blessing,* —— U.S. at ——–——, 117 S.Ct. at 1362–63.[4] Thus, the defendants' reliance on *Blessing* must be by *contrast* to its conclusion, based on *distinctions* between the federal oversight under Title IV–D and federal oversight under the provisions of the SSA in question here.

It is instructive to quote here the pertinent portion of the Supreme Court's decision in *Blessing:*

> Only twice have we found a remedial scheme sufficiently comprehensive to supplant § 1983: in *Sea Clammers, supra,* and *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984). In *Sea Clammers,* we focused on the "unusually elaborate enforcement provisions" of the Federal Water Pollution Control Act, which placed at the disposal of the Environmental Protection Agency a panoply of enforcement options, including noncompliance orders, civil suits, and criminal penalties. 453 U.S. at 13, 101 S.Ct. at 2622–2623. We emphasized that several provisions of the Act authorized private persons to initiate enforcement actions. *Id.,* at 14, 20, 101 S.Ct. at 2623, 2626–2627. We found it "hard to believe that Congress intended to preserve the § 1983 right of action when it created so many specific statutory remedies, including the two citizen-suit provisions." *Id.,* at 20, 101 S.Ct. at 2626. Likewise, in *Smith,* the review scheme in the Education of the Handicapped Act permitted aggrieved individuals to invoke "carefully tailored" local administrative procedures followed by federal judicial review. 468 U.S., at 1009, 104 S.Ct., at 3467. We reasoned that Congress could not possibly have wanted parents to skip these procedures and go straight to court by way of § 1983, since that would have "render[ed] superfluous most of the detailed procedural protections outlined in the statute." *Id.,* at 1011, 104 S.Ct., at 3468.

> We have also stressed that a plaintiff's ability to invoke § 1983 cannot be defeated simply by "[t]he availability of administrative mechanisms to protect the plaintiff's interests." *Golden State [Transit Corp. v. Los Angeles,* 493 U.S. 103,] 106, 110 S.Ct. [444,] 448 [107 L.Ed.2d 420 (1989) ]. Thus, in *Wright,* we rejected the argument that the Secretary of Housing and Urban Development's "generalized powers" to audit local public housing authorities, to enforce annual contributions contracts, and to cut off federal funding demonstrated a congressional intention to prevent public housing tenants from using § 1983 to enforce their rights under the federal Housing Act. *[Wright v. Roanoke Redevelopment and Housing Authority],* 479 U.S. [418,] 428, 107 S.Ct. [766,] 773 [93 L.Ed.2d 781 (1987) ]. We reached much the same conclusion in *Wilder,* where the Secretary of Health and Human Services had power to reject state Medicaid plans or to withhold federal funding to States whose plans did not comply with federal law. 496 U.S., at 521, 110 S.Ct., at 2523–2524. Even though in both cases these oversight powers were ac-

sequently, if the court determines that it does have subject matter jurisdiction over the § 1983 claims, the court need never consider these alternative arguments.

**4.** In *Blessing,* the Court devoted a more substantial portion of the decision to the question of whether Title IV–D created federal "rights" that could be individually enforced pursuant to § 1983, but left that question open. *Blessing,* —— U.S. at ——, 117 S.Ct. at 1362. Although the plaintiffs have devoted a significant portion of their resistance to the motions to reconsider subject matter jurisdiction to the question of whether Titles II and XVI, by contrast, do create such "rights," the court can find no challenge by the defendants to this court's prior ruling that those portions of the SSA do create such rights. *See Laird I,* 884 F.Supp. at 1283. Therefore, the court finds no need to revisit that question here.

companied by limited state grievance procedures for individuals, we found that § 1983 was still available. *Wright, supra,* at 427–428, 107 S.Ct., at 772–773; *Wilder, supra,* at 523, 110 S.Ct., at 2524–2525.

The enforcement scheme that Congress created in Title IV–D is far more limited than those in *Sea Clammers* and *Smith.* Unlike the federal programs at issue in those cases, Title IV–D contains no private remedy—either judicial or administrative—through which aggrieved persons can seek redress. *The only way that Title IV–D assures that States live up to their child support plans is through the Secretary's oversight. The Secretary can audit only for "substantial compliance" on a programmatic basis. Furthermore, up to 25 percent of eligible children and custodial parents can go without most of the services enumerated in Title IV–D before the Secretary can trim a State's AFDC grant. These limited powers to audit and cut federal funding closely resemble those powers at issue in Wilder and Wright.* Although counsel for the Secretary suggested at oral argument that the Secretary "has the same right under a contract as any other party to seek specific performance," Tr. of Oral Arg. 49, this possibility was not developed in the briefs. Even assuming the Secretary's authority to sue for specific performance, Title IV–D's administrative enforcement arsenal would not compare to those in *Sea Clammers* and *Smith,* especially if, as the Government further contended, *see id.,* at 49–50, no private actor would have standing to force the Secretary to bring suit for specific performance. *To the extent that Title IV–D may give rise to individual rights, therefore, we agree with the Court of appeals that the Secretary's oversight powers are not comprehensive enough to close the door on § 1983 liability.* [Freestone v. Cowan,] 68 F.3d [1141] at 1151–1156 [ (9th Cir.1995) ].

*Blessing,* —— U.S. at —— - ——, 117 S.Ct. at 1362–63 (emphasis added).

Thus, *Blessing* appears to leave open the possibility that federal oversight could be sufficiently comprehensive to preclude a private § 1983 cause of action aimed at systemic failures of a state agency administering a federal program to comply with federal law; however, the holding of the Court was that the oversight exercised under Title IV–D of the SSA, standing alone as the means to combat such systemic problems, was not sufficient. *Id.* The defendants ask the court to consider whether a more comprehensive oversight scheme under Titles II and XVI, coupled with a comprehensive remedial scheme for individual disability determinations, differs so considerably from the situation at issue in *Blessing* that this court must find that the § 1983 claim in Count I of the complaint is precluded.

#### 4. Analysis in the wake of Blessing

What, then, is the nature of federal oversight of the state defendant's disability determinations under Titles II and XVI of the SSA? In *Laird I,* this court described federal oversight as follows:

In Iowa, the DDSB has been designated under 42 U.S.C. § 421(a) to make the initial determination of disability. Parallel provisions for Title XVI are to be found in 42 U.S.C. §§ 1382, 1383. Further review of the disability determinations of the state agencies is vested in the Secretary of Health and Human Services under 42 U.S.C. §§ 421(c)(1) and (2). Under those provisions, the Secretary monitors compliance of the state disability determinations through "quality assurance reviews." If the Secretary finds "that a state agency is substantially failing to make disability determinations in a manner consistent with [the Secretary's] regulations and other written guidelines," the Secretary may take over the task of making initial disability determinations under either Title II or Title XVI. 42 U.S.C. §§ 421(b)(1), 1383(a). The Secretary is further required to review 50% of the state DDS's determinations of disability under 42 U.S.C. §§ 421(c)(1), (2), and (3).

*Laird I,* 884 F.Supp. at 1284. The state defendant's description of federal oversight is essentially the same, *see* State Defendant's Brief, p. 10, as is the federal defendant's. *See* Federal Defendant's Supplemental Filing

Addressing New Authority (Federal Defendant's Brief), pp. 6–7. The defendants argue that the comprehensiveness of this oversight demonstrates that Congress impliedly foreclosed private rights of action under 42 U.S.C. § 1983 to address systemic problems in disability determinations by state agencies under the SSA.

The oversight under Titles II and XVI is unquestionably more extensive than the "limited" oversight under Title IV–D. *See Blessing,* —— U.S. at ——, 117 S.Ct. at 1363 (describing the "limited" oversight under Title IV–D). Furthermore, the oversight in question here is coupled with an extensive administrative process designed to review and correct individual disability determinations. *Compare id.* (noting that "[t]he only way that Title IV–D assures that States live up to their child support plans is through the Secretary's oversight," because "Title IV–D contains no private remedy—either judicial or administrative—through which aggrieved persons can seek redress"). Yet, *Blessing* only establishes what is *insufficient* oversight to preclude a § 1983 action.

Similarly, the decisions upon which the Court in *Blessing* relied, *Wilder* and *Wright,* also rejected the sufficiency of federal oversight under the statutes in question as grounds for holding that Congress impliedly intended to foreclose a § 1983 action. In *Wilder,* the Court found that federal oversight consisted primarily of the power to withhold approval of state plans under the Medicaid Act, or to curtail federal funds to states whose plans were not in compliance with the federal act. *Wilder,* 496 U.S. at 521, 110 S.Ct. at 2523–24. The states were also required to institute their own "postpayment" claims reviews. *Id.* at 522, 110 S.Ct. at 2524. These procedures, which the Court described as "limited oversight," could not demonstrate an intent to foreclose altogether relief pursuant to § 1983. *Id.* Similarly, in *Wright,* the "generalized powers" of the Department of Housing and Urban Development to audit and cut off federal funds to the states under the Brooke Amendment to the Housing Act of 1937 were also insufficient to foreclose reliance on § 1983 to vindicate federal rights. *Wright,* 479 U.S. at 428, 107 S.Ct. at 773.

The question *Blessing* and its antecedents do not answer is, what is the minimum threshold for oversight that *would* suffice to preclude a § 1983 action? However, just where that threshold may be is not a question this court must answer either, because the court finds that threshold simply has not been reached here. This is so, because one of the limitations on federal oversight that led the Supreme Court to conclude in *Blessing* that a § 1983 remedy was not foreclosed is still present in the more extensive oversight scheme under scrutiny here. As is the case with Title IV–D, Title II and Title XVI of the SSA do not provide any avenue for a private actor to obtain standing to force the Commissioner of the Social Security Administration to bring suit to compel "specific performance" by the states of their obligations under these titles of the SSA. *Cf. Blessing,* —— U.S. at ——, 117 S.Ct. at 1363. Certainly, the defendants have cited to no such provision of the SSA providing such standing and this court has found none. At most, the defendants have argued vociferously that the federal defendant can be compelled to review individual disability determinations under 42 U.S.C. § 405(g) and to review a substantial number of state determinations pursuant to its oversight obligation. However, the court must agree with the plaintiffs that the defendants' argument amounts to an assertion that if enough people appeal from state determinations to the federal administrative process and if the results of federal review of state compliance is troubling enough, eventually the federal defendant will correct the systemic problems of the state defendant's noncompliance with federal law. Such a theoretical correction from the composite of incremental complaints by individuals seems to this court to be a far cry from the demonstration of an implied intent of Congress to foreclose a § 1983 action to enforce state compliance with federal law.

The court concludes that, even in light of *Blessing,* Titles II and XVI of the SSA do not belong to that rarefied group of statutes held to foreclose § 1983 actions. Even after *Blessing,* the group of statutes the Supreme Court has held preclude § 1983 actions on the basis of their remedial schemes consists

only of the Federal Water Pollution Control Act and the Education of the Handicapped Act. *Blessing,* —— U.S. at ——–——, 117 S.Ct. at 1362–63 (citing *Sea Clammers,* 453 U.S. at 13, 101 S.Ct. at 2622–23, as finding a § 1983 action foreclosed under the first statute, and *Smith,* 468 U.S. at 1011, 104 S.Ct. at 3468, as finding such an action foreclosed under the second). The group of statutes held to foreclose a § 1983 action on the basis of their oversight schemes or remedial and oversight schemes combined still has no members at all. *Id.* at ——, 117 S.Ct. at 1363; *Wilder,* 496 U.S. at 521–23, 110 S.Ct. at 2523–25; *Wright,* 479 U.S. at 428, 107 S.Ct. at 773.

The motion to reconsider jurisdiction will be granted only to the extent that the court has reconsidered its subject matter jurisdiction, but the relief of dismissal for want of subject matter jurisdiction will once again be denied.

### B. Reconsideration Of Partial Summary Judgment

The federal defendant has also moved the court to reconsider that portion of *Laird II,* 969 F.Supp. at 1167, in which this court granted summary judgment on the plaintiffs' claim that the IDDSB fails to evaluate properly subjective complaints of pain in making disability determinations.[5] Before considering the merits of this motion, however, the court must first determine the proper procedural footing for the motion and the standards the court is to apply to its disposition.

#### 1. Procedural basis and standard of review

The federal defendant has cast its motion to reconsider the grant of partial summary judgment as a motion to alter or amend the judgment pursuant to FED.R.CIV.P. 59(e). However, the plaintiffs contend that any motion pursuant to Rule 59(e) is untimely, because it was not filed until more than ten days after the court filed the challenged decision. The plaintiffs contend further that the federal defendant cannot make the requisite showing of good cause for relief from judgment pursuant to Rule 60. Next, the plaintiffs contend that neither Rule 59(e) nor Rule

60 provides a basis for reconsideration of a ruling granting partial summary judgment, because such a ruling is an interlocutory order, not a final judgment. They acknowledge that the court may, in its discretion, review and revise an interlocutory order. However, they argue that there is no need for the court to exercise that discretion here, because the grant of partial summary judgment was not in error.

■ The court can indeed exclude Rule 59(e) as the basis for the federal defendant's motion to reconsider the ruling on the motion for partial summary judgment. A Rule 59(e) motion must be filed "not later than 10 days after the entry of the judgment." FED. R.CIV.P. 59(e). A party's failure to file a timely Rule 59(e) motion eliminates that rule as the basis for the district court's action. *See Spangle v. Ming Tah Elec. Co.,* 866 F.2d 1002, 1003 (8th Cir.1989); *Sanders v. Clemco Indus.,* 862 F.2d 161, 168 (8th Cir.1988); *Townsend v. Terminal Packaging Co.,* 853 F.2d 623, 624 (8th Cir.1988). The ruling in question here was filed on June 12, 1997, and the defendant did not move to "reconsider" it until August 19, 1997. Assuming that the deadline for filing a motion pursuant to FED. R.CIV.P. 59(e) could be extended, no motion requesting such an extension was ever filed. Thus, Rule 59(e) cannot provide a basis for the defendant's motion to alter or amend the order granting partial summary judgment, because the motion filed pursuant to that rule was untimely. Indeed, the motion is so patently untimely that the court cannot understand how the federal defendant could reasonably have relied upon Rule 59(e) as the authority for his motion.

■ Furthermore, even if the federal defendant's Rule 59(e) motion had been timely, it would not have been the appropriate vehicle to obtain reconsideration of a ruling granting partial summary judgment. Rule 59(e) refers to a motion "to alter or amend *a judgment.*" FED.R.CIV.P. 59(e) (emphasis added). The Seventh Circuit Court of Appeals has explained that "a ruling [granting partial summary judgment] is not a 'judgment' within the meaning of the Rules." *Deimer v. Cincinnati Sub–Zero Prods., Inc.,*

---

**5.** This claim was stated in subsection (a) of Count I of the plaintiffs' complaint.

**1354**

990 F.2d 342, 345–46 (7th Cir.1993) (citing FED.R.CIV.P. 54(a), which defines a "judgment" within the meaning of the Federal Rules of Civil Procedure as "a decree and any order from which an appeal lies," and also citing *Minority Police Officers Ass'n of South Bend v. City of South Bend, Ind.,* 721 F.2d 197, 200 (7th Cir.1983), which states, "The word 'judgment' in the term 'partial summary judgment' is a misnomer. A partial summary judgment is merely an order deciding one or more issues in advance of trial. . . ."). Similarly, grants of partial summary judgment are generally considered non-appealable, interlocutory orders, because they are not "final" within the meaning of 28 U.S.C. § 1291. This was the conclusion of the Eighth Circuit Court of Appeals in *F.D.I C. v. Bell,* 106 F.3d 258 (8th Cir.1997), in which the court recognized that a grant of partial summary judgment on liability, leaving open the issue of damages, was not a "final order" for purposes of appeal. *Bell,* 106 F.3d at 261. *See also Smith v. Arkansas Dep't of Correction,* 103 F.3d 637, 650 (8th Cir.1996) ("Partial summary judgment on the issue of liability would not ordinarily be immediately appealable."). Similarly, the grant of partial summary judgment in this declaratory judgment action, in which the court found a violation of law, but left open the question of relief, is interlocutory, not final, in character.

■ Nor would Rule 60(b) provide a means to reconsider a ruling granting partial summary judgment, because that rule also applies only to "final" judgments. *See St. Mary's Health Ctr. v. Bowen,* 821 F.2d 493, 497 (8th Cir.1987) (an order granting partial summary judgment on liability was interlocutory and not "final" under Rule 60(b) nor appealable under 28 U.S.C. § 1291). Consequently, the Federal Rules of Civil Procedure do not seem to provide any basis for the defendant's motion to reconsider this court's grant of partial summary judgment.

■ This is not to say that the federal defendant could not somehow move to reconsider the order granting partial summary judgment. Indeed, the result of a determination that Rule 59(e) and Rule 60(b) are inapplicable to the present motion to reconsider a grant of partial summary judgment actually means that the court has *more,* not

less, discretion to alter or amend the ruling. Under Rule 59(e), the court may alter or amend its judgment only if it finds a "manifest" error of law or fact in its ruling. *See Hagerman v. Yukon Energy Corp.,* 839 F.2d 407, 414 (8th Cir.) (quoting *Rothwell Cotton Co. v. Rosenthal & Co.,* 827 F.2d 246, 251 (7th Cir.), *as amended,* 835 F.2d 710 (7th Cir.1987), quoting in turn *Keene Corp. v. International Fidelity Ins. Co.,* 561 F.Supp. 656, 665–66 (N.D.Ill.1983), *aff'd,* 736 F.2d 388 (7th Cir.1984)), *cert. denied,* 488 U.S. 820, 109 S.Ct. 63, 102 L.Ed.2d 40 (1988); *see also Committee for the First Amendment v. Campbell,* 962 F.2d 1517, 1523 (10th Cir. 1992) (purpose of a motion to alter or amend a judgment under Rule 59(e) "is to correct manifest errors of law or to present newly discovered evidence."). Similarly, Rule 60(b) only provides for relief in specific enumerated circumstances. FED.R.CIV.P. 60(b).

■ The situation is different when a party moves to reconsider a grant of partial summary judgment, as the Seventh Circuit Court of Appeals also explained in *Deimer:*

[A] district court's "partial summary judgment" [is] not subject to the strictures of Rule 59(e), and the district court retain[s] the power to deal with any aspect of the lawsuit until its termination by the entry of a final and appealable judgment. *See* 10A CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 2737, at 455–56 (2d ed.1983); *see also Minority Police Officers Ass'n of South Bend v. City of South Bend, Ind.,* 721 F.2d 197, 200 (7th Cir.1983). . . . While [the movant's] tardiness in submitting her motion for reconsideration [pursuant to Rule 59(e)] and the accompanying clarification was a valid consideration for the district court to weigh in its determination of the matter, *its misapprehension of the procedural context in which it ruled resulted in its adopting afar more restrictive view of its discretion than was necessary.*

*Deimer,* 990 F.2d at 346 (emphasis added). Thus, the court's discretion to alter or amend its grant of partial summary judgment is actually broader than would be its power to alter or amend a final judgment pursuant to either Rule 59(e) or Rule 60(b), because the court retains the discretion to alter or amend

such a non-final, non-appealable interlocutory order. *Id.*

## 2. *This court's prior decision*

What is it the court is asked to reconsider, in the exercise of its discretion to review and amend an interlocutory order? In *Laird II,* this court concluded that inconsistencies in the treatment of subjective pain in different sections of the same federal regulations—20 C.F.R. § 404.1529(c)(3) and nearly identical provisions of 20 C.F.R. § 416.929(c)(3), on the one hand, and 20 C.F.R. § 404.1529(a) and nearly identical provisions of 20 C.F.R. § 416.929(a), on the other—demonstrated that disability *determinations* are not being made in accordance with Eighth Circuit precedent, specifically, *Polaski v. Heckler,* 739 F.2d 1320 (1984). *Laird II,* 969 F.Supp. at 1180–81. As a consequence of this inconsistency within the regulations, the court concluded that "[t]his is not a *Chevron* situation where the courts are required to defer to an agency's permissible construction of a statute." *Laird II,* 969 F.Supp. at 1181 n. 11 (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984)). Rather, the court found that the internal conflict considerably lessened any deference due the agency's regulations.[6] *Id.* (citing *Wilkes v. Gomez,* 32 F.3d 1324, 1329 n. 6 (8th Cir.1994), *cert. denied,* 514 U.S. 1052, 115 S.Ct. 1431, 131 L.Ed.2d 312 (1995)). After further review of *Polaski* and its progeny, this court reiterated that the proper standard, not adequately reflected in the regulations owing to internal inconsistencies, is that "[a] claimant's subjective complaints alone are sufficient to prove disability." *Id.* at 1182.

The court then considered extensively whether the record generated a genuine issue of material fact as to whether the IDDSB and the Social Security Administration violated the holding in *Polaski. Id.* at 1182–88. That review of the record included examina-

tion of SSR 96–7p, which states the standards for review of subjective pain in accordance with *Polaski. Id.* at 1181–84. The court found that predecessors of that ruling, however, clearly had not been in accord with *Polaski,* and further found that SSR 96–7p only stated an intent to "clarify" policy rather than to change it. *Id.* The court took note of the Social Security Administration's extensive record of failure to acquiesce to Eighth Circuit precedent, especially *Polaski. Id.* at 1185. Next, the court examined the evidence of the actual practices of medical consultants employed by the IDDSB to make disability determinations and found beyond dispute that they relied more heavily on objective medical evidence than on evidence of subjective pain, discounting the latter when not supported by the former. Thus, the court found that there was no genuine issue of material fact that, "when the issue moves from the theoretical to the empirical and DDS medical consultants make concrete decisions with lasting effects on people's lives, the consultants use the wrong standard." *Id.* at 1187. The court therefore granted summary judgment on that part of the plaintiffs' claim in Count I in which they asserted that the IDDSB fails to evaluate properly subjective pain in making disability determinations. *Id.*

## 3. *The defendant's challenge*

■ The federal defendant challenges several steps in the court's grant of partial summary judgment. First, the federal defendant argues that the court applied the wrong standard, failing to accord agency regulations proper deference. He asserts that "[i]t is circular to conclude that no deference should be afforded based on an alleged inconsistency [in agency regulations] when the inconsistency can only be found by not affording traditional deference in the first place." Federal Defendant's Brief In Support Of Motion For Reconsideration Of Grant Of Partial Summary Judgment, p. 7.[7]

---

6. The court acknowledges that there is a typographical error, as the federal defendant suggests, in footnote 11 of the decision in *Laird II.* See *Laird II,* 969 F.Supp. at 1181 n. 11. There, the court wrote, "In this case where the agency seems to have adopted contemporaneous conflicting *statutes,* the principle is the same: the courts must make sense of the conflict." *Id.*

(emphasis added). Plainly, the court intended to refer to the agency's adoption of "contemporaneous conflicting *regulations.*"

7. The brief referred to is actually entitled The Commissioner Of Social Security's Memorandum In Support Of His Motion For Reconsideration Of The Court's Memorandum Opinion

Next, he contends that, viewing the regulations with the appropriate degree of deference, the regulations are consistent not only with each other, but with the statute and *Polaski.* Specifically, he asserts that the court omitted from its analysis the key threshold finding that the claimant must show that his or her disability results from a medically determinable physical or mental impairment, and all the regulations require is objective evidence of such an impairment in addition to subjective pain to prove disability. The court, he argues, erroneously concluded that subjective pain, standing alone, could prove disability. Third, the federal defendant contends that SSRs can only "clarify" not change policy; hence, the court erred in failing to recognize that the Social Security Administration's current substantive interpretation, under the regulations and SSR 96–7p, is consistent with *Polaski.* Finally, as a corollary to prior arguments, the federal defendant contends that no acquiescence ruling is required to bring the Social Security Administration's policy into accord with *Polaski,* because its policy is already consistent with *Polaski.* The court will consider each of these challenges in turn.

### a. Deference

The federal defendant's first ground for reconsideration and reversal of this court's grant of summary judgment is that the court, by circular reasoning, failed to accord agency regulations due deference, because any inconsistencies in the regulations were only apparent if the regulations were *not* accorded the proper degree of deference. The short answer to this argument is that no amount of deference, nor any part of the defendant's argument, can reconcile subsections (a) and (c) of 20 C.F.R. §§ 404.1529 and 416.929 with each other or reconcile subsection (a) of those regulations with *Polaski.*

As this court stated in *Laird II,*

"*Polaski* requires that an ALJ give full consideration to all of the evidence presented relating to subjective complaints." *Ramey v. Shalala,* 26 F.3d 58, 59 (8th Cir.1994). In making that consideration, "The absence of an objective medical basis to support the claimant's subjective allega-

tions of pain is simply one factor to be considered along with all of the evidence presented relating to subjective complaints." *Harris v. Shalala,* 45 F.3d 1190, 1193 (8th Cir.1995). Therefore, "an adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not support them." *Dodson v. Chater,* 101 F.3d 533, 534 (8th Cir.1996). The logical basis for this rule,

stems from the recognition that the physiological, functional, and psychological consequences of illness and injury vary with each individual. A given injury may affect one individual in any inconsequential way, whereas the same disorder may severely disable another person who has a greater sensitivity to pain or whose physical condition is deteriorated.

*Cockerham v. Sullivan,* 895 F.2d 492, 496 (8th Cir.1990). It is only "after full consideration of all of the evidence relating to subjective complaints" that an "adjudicator may discount those complaints if there are inconsistencies in the evidence as a whole." *Dodson,* 101 F.3d at 534. As the above cited cases demonstrate, and as the plaintiffs argue, it is not necessary for a claimant who files for benefits in the Eighth Circuit to produce objective medical evidence that the symptoms he or she suffers as the result of an underlying impairment are severe enough to cause disability. A claimant's subjective complaints alone are sufficient to prove disability.

*Laird II,* 969 F.Supp. at 1181–82. Although, as the court found in *Laird II,* these standards are reflected in subsection (c) of 20 C.F.R. §§ 404.1529 and 416.929, *Laird II,* 969 F.Supp. at 1180–81, the standards stated in subsection (a) of the same regulations simply cannot be reconciled with the judicial standard.

For example, 20 C.F.R. § 404.1529(a) provides:

In determining whether you are disabled, we consider all your symptoms, including pain, and *the extent to which your*

Granting Summary Judgment To Plaintiffs On Subpart (a) Of Their Claim Alleging The State Defendant Fails To Properly Evaluate Subjective Complaints.

*symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence....* We will consider all of your statements about your symptoms, such as pain, and any description you, your physician, your psychologist, or other persons may provide about how the symptoms affect your activities of daily living and your ability to work. *However, statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.*

20 C.F.R. § 404.1529(a) (emphasis added). The same language is found in 20 C.F.R. § 416.929(a). These regulations *twice* state that subjective pain evidence is evaluated on the basis of the extent to which it is consistent with objective evidence, that is, whether, based on objective evidence, the impairment could reasonably be expected to produce the pain or other symptoms alleged. Such a standard is irreconcilable with the *Polaski* standard, which specifically eschews any correlation between the extent of subjective pain and objective evidence that the impairment could cause that degree of pain. *See Laird II*, 969 F.Supp. at 1181–82 (citing cases explaining the *Polaski* standard). Deference does not require the court to be blind to such irreconcilable inconsistencies within regulations or between regulations and controlling judicial precedent. With blinders off, it is clear that the regulations do not state the proper standard for the evaluation of subjective pain in making disability determinations and the court's decision need not be reversed on either the ground of lack of appropriate deference or erroneous construction of the regulations.

### b. The key threshold question

The defendant's next argument for reversal of the court's grant of partial summary judgment can only be described as a red herring. The defendant asserts that the court improperly omitted from its interpretation of the regulations the requirement that the plaintiff first establish a medically determinable impairment when it concluded that a claimant's subjective complaints alone are sufficient to prove disability. However, the court (and indeed the plaintiffs) plainly assumed that subjective pain would be evaluated *after* such a medically determinable impairment had been established. *See Laird II*, 969 F.Supp. at 1180 (noting that the plaintiffs' premise was that "once a claimant has established by medically acceptable objective evidence an underlying impairment that could reasonably be expected to cause pain, a claimant's subjective complaints about the intensity or degree of his or her pain alone can be enough to establish disability"). It was in this context that the court reached its conclusion that the regulations are internally inconsistent and not in accord with *Polaski*. Thus, the court's conclusion should plainly have been understood to be that "once a claimant has established by medically acceptable objective evidence an underlying impairment that could reasonably be expected to cause pain, a claimant's subjective complaints alone are sufficient to prove disability, without regard to whether such complaints are consistent with the extent or degree of pain that could reasonably be expected from the objective medical evidence."

Thus, in *Laird II*, the court did take account of the "key threshold finding" that the claimant must establish an underlying impairment by objective medical evidence. The court remains completely unpersuaded by the defendant's argument that all the regulations do is echo the requirement that the plaintiff establish this key threshold requirement. As the court explained just above, the regulations instead require a correlation between the degree of pain allegedly suffered by the claimant and the objective medical evidence as to what pain could reasonably be expected. That is the wrong standard under *Polaski* and its progeny.

### c. Agency rulings and the need for acquiescence

The defendant's next two arguments for reversal of the grant of partial summary

judgment fall under the weight of the inadequacy of their previous arguments. Even assuming agency rulings can only "clarify" not change agency policy, when that policy as stated in agency regulations is inconsistent with controlling judicial precedent, the agency's non-binding nods in the direction of compliance in agency rulings do not mitigate the agency's non-compliance. Furthermore, because agency regulations cannot be deemed to be reconcilable with controlling precedent, whatever degree of deference is accorded the agency's interpretations, an acquiescence ruling is required. For more than a decade, the Social Security Administration has failed to bring agency regulations on subjective pain in line with the *Polaski* standard. *See Layton v. Heckler,* 726 F.2d 440, 442 (8th Cir. 1984) ("[W]e wish to underscore that we shall continue to upset the findings of the Secretary [on evaluation of subjective complaints of pain] until such time as she sees fit to comply with the decisions of this Court."). In these circumstances, an acquiescence ruling is not only required, but long overdue.

### d. IDDSB determinations

Finally, no ground for reversal of the court's grant of partial summary judgment exists when the court's conclusion that the undisputed record demonstrates that the IDDSB does not, in fact, make disability determinations based on subjective pain in accordance with the *Polaski* standard goes unchallenged. Even were the federal regulations and federal agency rulings in accord with the *Polaski* standard, the undisputed record in this case would demonstrate that the medical consultants making disability determinations for the IDDSB are not applying that standard. *See Laird II,* 969 F.Supp. at 1185–88. Therefore, the court reaffirms its grant of partial summary judgment in *Laird II* and will deny the federal defendant's motion to alter or reverse that ruling.

### III. CONCLUSION

Although the court has reconsidered both its ruling finding subject matter jurisdiction over the plaintiffs' § 1983 claims and its ruling granting summary judgment on part of one of those claims, the court finds no ground to alter, amend, or reverse either ruling. The court concludes that, even in light of *Blessing,* Titles II and XVI of the SSA do not—on the basis of their remedial schemes, federal oversight of state agency determinations, or both—preclude an action pursuant to § 1983 to enforce proper standards under the SSA. Furthermore, the court reaffirms its conclusion that agency regulations are internally inconsistent on the treatment of evidence of subjective pain in disability determinations, and thus do not state the standard dictated by judicial decisions of this circuit. The court also reaffirms its conclusion that there is no genuine issue of material fact that the state defendant does not follow the proper standard in evaluating subjective pain evidence.

Therefore, the defendants' motions to reconsider subject matter jurisdiction are **denied.** The federal defendant's motion to reconsider the grant of partial summary judgment on subpart (a) of the claim in Count I of the plaintiffs' complaint is also **denied.**

**IT IS SO ORDERED.**